In re Danny Keith BURTON, Debtor.

Marla Raye Burton, Plaintiff,

v.

Danny Keith Burton, Defendant.

Bankruptcy No. 99–30218.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Dec. 23, 1999.

Lee J. Viorel, Springfield, MO, for plaintiff.

David E. Schroeder, Springfield, MO, for defendant.

### MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

Danny Keith Burton, the Debtor is this case, filed for protection under Chapter 7 of the Bankruptcy Code on March 24, 1999. Among the creditors listed was his former spouse, Marla Raye Burton. On October 7, 1999, Marla Raye Burton

("Marla" or "Plaintiff") filed a "Complaint for Determination Excepting a Debt Owing to Marla Burton From Discharge Under 11 U.S.C. § 523." At issue are two debts: (1) a money judgment in the amount of $28,618.55 awarded to Marla Raye Burton pursuant to a Judgment of Dissolution of Marriage, entered by the Circuit Court of Stone County on January 16, 1998, and (2) any potential liability for a deficiency on a debt owed to Nations-Bank (now Bank of America), which was purportedly assumed by the Debtor pursuant to the Judgment of Dissolution. Count I of the Plaintiff's Complaint asserts 11 U.S.C. § 523(a)(15) as the basis for a determination of nondischargeability, and Count II asserts 11 U.S.C. § 523(a)(5). A hearing was held on this matter at the federal courthouse in Joplin, Missouri, on December 14, 1999. Upon consideration of the pleadings, evidence adduced at trial, and relevant law, the Court will grant in part and deny in part the relief requested in Count I, and deny Count II in its entirety.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § § 1334(b) and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I). The following constitutes the Court's findings of fact and conclusions of law. Fed.R.Bankr.P. 7052.

The factual background will be developed as necessary in the discussion section.

## DISCUSSION

For the sake of convenience, our discussion will proceed according to the debt at issue, rather than focusing separately on each Count of the Plaintiff's Complaint.

### 1. The NationsBank debt.

At the commencement of the hearing, both parties stated that there would be no further argument regarding the Nations-Bank debt and that they would leave it to the Court to decide the issue on the pleadings. The Plaintiff's Complaint alleges that the NationsBank debt is nondis-

chargeable pursuant to 11 U.S.C. § 523(a)(15). The Complaint (perhaps wisely) does not seek a determination of nondischargeability under 11 U.S.C. § 523(a)(5). Accordingly, the Court limits its analysis to § 523(a)(15).

Section 523(a)(15) provides, in pertinent part, as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) *that is incurred by the debtor* in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15) (emphasis added).

■ This statute creates a shifting burden between the plaintiff and the defendant debtor. *Florio v. Florio (In re Florio)*, 187 B.R. 654, 657 (Bankr.W.D.Mo. 1995). First, a Plaintiff has the burden to show that the debt is not the kind described in § 523(a)(5) and that it was "incurred by the debtor in the course of a divorce or separation." *Id.* Once this burden is met, the debt will be considered nondischargeable unless the debtor can make one of two showings. The debtor must show that either § 523(a)(15)(A) or (B) is applicable. In regards to the Nati-

onsBank debt, the Plaintiff has failed to meet the initial burden of proof under § 523(a)(15).

■ Although the Plaintiff has shown that the NationsBank debt was not of the kind described in § 523(a)(5), she has not succeeded in establishing that it was "incurred by the debtor in the course of a divorce or separation." In this jurisdiction, that phrase has been interpreted as requiring the creation of a debt in the course of a divorce or separation that was not in existence before the divorce. *Stegall v. Stegall (In re Stegall)*, 188 B.R. 597, 598 (Bankr.W.D.Mo.1995). A hold harmless or indemnification agreement in the divorce decree will usually meet this requirement. *Id.* Conversely, in the absence of a hold harmless agreement, § 523(a)(15) is inapplicable to joint debts that were incurred by the Debtor prior to the divorce proceeding. *McCracken v. LaRue (In re LaRue)*, 204 B.R. 531, 536 (Bankr.E.D.Tenn.1997). *See also, Belcher v. Owens (In re Owens)*, 191 B.R. 669, 674 (Bankr.E.D.Ky.1996). For example, a "new" debt is created between a debtor and his ex-spouse when, pursuant to a divorce decree, the debtor is ordered to assume a credit card debt incurred jointly during the marriage and ordered to hold the ex-spouse harmless for that debt. If the debtor fails to pay off the credit card after the divorce, and the credit card company seeks repayment from the non-debtor ex-spouse, the debtor would have to indemnify the ex-spouse pursuant to the hold harmless agreement, thus the creation of a "new" debt to the spouse. In the absence of such a hold harmless agreement, there would be no new obligation to indemnify, and the debtor would be able to obtain a discharge of the joint credit card debt in bankruptcy (assuming there were no other dischargeability issues) just as

the ex-spouse would be free to do the same.

■ In the present case, there is no indemnification or hold harmless agreement for the debt to NationsBank. In fact, the Judgment of Dissolution does not even contain an explicit statement that the Debtor was to assume the NationsBank debt. Part III (entitled Property Rights), paragraph two (2), contains the only reference to the NationsBank debt. It provides as follows:

> Both parties requested that the new home and 1.4 acres located at Rt.2, Crane, Missouri, as more specifically described in Exhibit ___ (sic) be awarded to husband. The house has an (sic) present fair market value of $137,000.00 subject to debts in the sum of $121,372.37 for an equitable value of $15,627.63.

The Debtor's obligation to pay the NationsBank debt is only inferred from the fact that he was to retain ownership and possession of the property securing the debt. Nothing else in the decree indicates that the Debtor has an obligation to indemnify his ex-spouse or otherwise incurred a new obligation to his ex-spouse (the Plaintiff) related to this debt. Consequently, the NationsBank debt does not constitute the kind of debt that is covered by § 523(a)(15), and is therefore determined to be dischargeable.

The unfortunate but unavoidable result of this determination is that, in the event there is a deficiency (which there will likely be)[1] when NationsBank forecloses on the property securing the debt (scheduled to occur on January 14, 2000), Marla Burton will be solely liable for that deficiency, and ultimately may need to seek a discharge of that debt through bankruptcy as well.

---

1. According to the testimony of the Debtor, the house and land are subject to three mortgages: a first mortgage for $59,582.00, a second mortgage for $39,492.00, and a third mortgage for approximately $100,000.00, for a total indebtedness of $199.074.00. The third mortgage is also collateralized by eighty (80) acres of land owned by the Debtor's mother. No clear evidence was given as to the value of the 80–acre tract, but the most likely result of the foreclosure sale will be a significant deficiency.

For the reasons stated above, the NationsBank debt is determined to be dischargeable.

## 2. The $28,618.55 money judgment.

The Plaintiff also seeks to have the $28,618.55 money judgment awarded to her pursuant to Section III, paragraph 9, of the Judgment of Dissolution declared nondischargeable under § 523(a)(5), or alternatively under § 523(a)(15). For the reasons stated below, the Court finds that it is not the kind of debt described in § 523(a)(5), but that the debt is nondischargeable under § 523(a)(15).

### a. 11 U.S.C. § 523(a)(5)

Section 523(a)(5) provides, in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

The threshold question that must be answered by this Court is whether the $28,618.55 money judgment awarded to the Plaintiff in the Judgment of Dissolution constitutes a liability "in the nature of alimony, maintenance or support."

▇▇▇ Whether an obligation is in the nature of alimony, maintenance or support is a matter of federal bankruptcy law. *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir.1983). The characterization of the obligation depends primarily on the function the award was intended to serve at the time it was awarded. *In re Reiff*, 166 B.R. 694, 696 (Bankr. W.D.Mo.1994). The parties' intent is determined by the totality of circumstances at the time of the award, *In re Frye*, 231 B.R. 71, 73 (Bankr.E.D.Mo.1999); *In re Williams*, 703 F.2d at 1057–58, but most courts have narrowed the inquiry down to one or more of three main factors: (1) the language and substance of the dissolution decree or separation agreement, *In re Kline*, 172 B.R. 279, 281 (Bankr.W.D.Mo. 1994); *In re Peterson*, 133 B.R. 508, 512 (Bankr.W.D.Mo.1991); (2) the parties' relative financial circumstances at the time of the dissolution; *Holliday v. Kline*, 65 F.3d 749, 751 (8th Cir.1995); *Stamper v. Stamper (In re Stamper)*, 131 B.R. 433, 435 (Bankr.W.D.Mo.1991); and (3) the degree to which the obligation enables the recipient to maintain daily necessities. *Id.* The Court finds that, in the present case, all three of these factors indicate that the money judgment was not intended to function as alimony, maintenance or support.

### (1) Language and substance of the decree.

The language and substance of the Judgment of Dissolution indicate that the money judgment was intended to balance the division of assets between the parties rather than to function as alimony, maintenance or support. This is clear from the plain language of the award and its placement in the Judgment of Dissolution. The award was placed in the section of the decree entitled "Property Rights," and provided:

This distribution divides total net marital assets (excluding corporate assets and debts, which are not marital property) of $107,519.06 between the parties, with $25,141.00 (23.4%) awarded to Wife and $82,378.06 (76.6%) awarded

to Husband. *In order to more nearly equalize the distribution of marital property between parties,* Wife is awarded a judgment against Husband in the sum of $28,618.55, thereby awarding 50% of the net marital property to Wife and 50% of the net marital property to Husband.

Plaintiff's Exhibit 1, Section III, para. 9 (emphasis added).

It is hard to imagine a less ambiguous statement that the money judgment's only function was to equally divide marital assets.

▮▮▮▮▮ Furthermore, this reading of the money judgment award is supported by a fundamental rule of contractual interpretation, *"expressio unius est exclusio alterius,"* the expression of one is the exclusion of all others. With this axiom in mind, we compare Section V (Miscellaneous), paragraph 2 of the Judgment of Dissolution to the section awarding Marla the money judgment. Section V, paragraph 2 states:

ATTORNEY'S FEES. Judgment is also entered against Husband in the sum of $5,000.00 for a portion of Wife's reasonable attorney's fees. *This judgment is designated as being in the nature of support for Wife in order that it not be dischargeable in bankruptcy . . .*

Plaintiff's Exhibit 10, Section V, para. 2 (emphasis added).[2]

The Judgment of Dissolution's express statement that the judgment for attorney's fees is designated as being in the nature of support, considered alongside the absence of such a statement in the section relating to the $28,618.55 money judgment, leads us to the conclusion that its absence was intentional. 17A Am.Jur.2d *Contracts* § 379 (1991). Accordingly, the money judgment should not be considered as being in the nature of alimony, maintenance, or support based on the language of the award and the substance of the decree.

(2) Relative financial circumstances of the parties.

A comparison of the relative financial circumstances of the parties at the time of the decree yields the same conclusion, that is, that the money judgment was not intended to be in the nature of alimony, maintenance, or support. At the time of the dissolution, the parties' financial circumstances were fairly equal, if not slightly worse for the Debtor, inasmuch as Marla had a steady, albeit low-paying, job at Jim Houk Guttering and Siding, and the Debtor's only income was from his failing business, the Springfield Salvage Pool, and a side business which only earned him $2,000.00 to $3,000.00 in 1996 (the evidence suggests that he has not made any money from it since). The state court recognized the equality of the parties' financial situations in Section IV (Maintenance), paragraph 1, of the Judgment of Dissolution:

Both parties now have sufficient property, including marital property apportioned to him or her to provide for his or her reasonable needs and are now able to support themselves *through appropriate employment.*

Plaintiff's Exhibit 10, Section IV, para. 1 (emphasis added).

The Plaintiff contends that this section should be read as a statement of the state court's intent that the property division, which includes the money judgment, was structured to take the place of maintenance. If the words, "through appropriate employment" had been omitted, we might be inclined to agree with her; without that phrase, the reference to the "ability to support themselves" would be directly tied to the apportionment of marital property.

---

**2.** The Court notes that if the attorney's fees were at issue, we would not be bound by this language. *See In re Markizer,* 66 B.R. 1014, 1018 (Bankr.S.D.Fla.1986) (holding that statement in marital settlement agreement waiving dischargeability was "wholly void" and against public policy). But, as a statement of the parties' and the state court's intent, it is extremely persuasive.

The inclusion of the words "through appro-priate employment" after "ability to support themselves," however, significantly changes the import of the sentence. The ability of the parties to support themselves is tied not to the property division, but rather to their appropriate employment. And the fact that the state court's Temporary Order provided Marla $400.00 in maintenance when she had no employment, but the final Judgment of Dissolution did not award her any maintenance because she was employed at the time of the final decree, strengthens the inference that the state court's focus was on the parties' employment and not on the division of property when it decided that they could support themselves without an award of maintenance.

(3) The degree to which the obligation enables the recipient to maintain daily necessities.

The third factor clearly leans in favor of a determination that the money judgment was not intended to be in the nature of alimony, maintenance, or support. Simply stated, it's hard to buy daily necessities with a money judgment; cash or the ability to receive cash on a regular basis work considerably better, and the state court surely knew this. The money judgment was intended to equalize the property division which, on the basis of hard assets, ended up favoring the Debtor 76.6% to 23.4%. The use of the money judgment to accomplish this aim is most likely attributable to the fact that most of the assets involved were not liquid and that an even division was difficult to attain taking into account the nature of the assets and the wishes of the parties. If the state court had truly intended the $28,618.55 to be in the nature of support, it most surely would have given it to Marla Burton in a more readily useable form, i.e., in cash, land, or other assets that could readily be liquidated.

In sum, all of the factors considered in the analysis of whether the $28,618.55

money judgment in the Judgment of Dissolution was intended to function in the nature of alimony, maintenance or support, point to the conclusion that it was not intended to function as such, but rather, was included to achieve an equal division of assets between the parties. Accordingly, the Court determines that § 523(a)(5) is inapplicable to the $28,618.55 money judgment.

b. § 523(a)(15)

█ In contrast to the Plaintiff's § 523(a)(15) claim on the NationsBank debt, the Plaintiff has met her burden on her § 523(a)(15) claim on the $28,618.55 money judgment. The debt is not of the kind described in § 523(a)(5) and it clearly constitutes a liability incurred in relation to a divorce or separation, inasmuch as it did not exist prior to the divorce or separation and was created entirely by the Judgment of Dissolution. Consequently, in order to obtain a discharge of this debt, the Debtor has the burden of showing either (1) that he is unable to pay the debt from income or property not needed for the support of his children and himself and not needed to continue, preserve, or operate a business; or (2) that discharging the debt would be more beneficial to him than detrimental to the Plaintiff. 11 U.S.C. § 523(a)(15)(A) and (B). The Debtor must make these showings by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). The Debtor has not met his burden for either alternative.

The first alternative under § 523(a)(15) requires the Court to examine the Debtor's ability to pay, and under a straightforward analysis of the debtor's income and reasonable expenses, it might appear at first blush that the Debtor does not have the ability to pay the money judgment. In fact, the evidence adduced at trial showed that Debtor currently has absolutely *no* income of his own. He "helps out" at his current wife's new sideline business,

Blast–N–Powder,[3] but he does not receive any payment for his services and is unlikely to be paid for his services in the foreseeable future, according to the testimony of his wife, Joyce Burton. The Debtor's expenses, including an $829.00 a month child support payment, are being paid entirely by his wife and/or mother. Even considering his wife's income of approximately $1,900.00 a month (from her full-time teaching job) and "frequent" assistance from his mother, the Debtor's expenses still slightly exceed "his" income.

 The Court's consideration of the Debtor's ability to pay, however, is not limited to a bare assessment of his current income and reasonable expenses. Courts in this jurisdiction have taken guidance from the analysis employed in § 523(a)(8) student loan discharge cases, which takes into account the "totality of the circumstances," to determine whether a debtor has the ability to pay in the context of § 523(a)(15). *In re Florio*, 187 B.R. at 657; *Comisky v. Comisky (In re Comisky)*, 183 B.R. 883, 884 (Bankr. N.D.Cal.1995). The totality of the circumstances test used in § 523(a)(8) cases includes, but is not limited to, an analysis of (1) the debtor's past, present, and reasonably reliable future financial resources, (2) calculation of the debtor's and his or her dependents' reasonable necessary living expenses, and (3) any other relevant facts and circumstances surrounding the particular bankruptcy case. *See Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 140 (8th Cir. BAP 1999). When a debtor's inability to pay is caused by his or her unemployment, as it is here, a number of courts have examined the circumstances surrounding the unemployment, possibly as a combination of the "reasonably reliable future financial resources" and "particular circumstances" analyses. *See e.g., Clark v. United Student Aid Funds, Inc. (In re Clark)*, 240 B.R. 758, 762 (Bankr.W.D.Mo.

1999) ("In this district a debtor who has the ability to work, must work"); *Johnson v. Rappleye (In re Rappleye)*, 210 B.R. 336, 340–41 (holding that debtor who voluntarily took missionary job could not claim an inability to pay under § 523(a)(15)); *In re Florio*, 187 B.R. at 657. In particular, courts consider whether the circumstances which led to the debtor's unemployment were beyond his or her control or whether the debtor willfully or negligently caused the unemployment. *O'Brien v. Household Bank FSB (In re O'Brien)*, 165 B.R. 456, 460 (Bankr. W.D.Mo.1994). If a court finds that the debtor's unemployment was willfully or negligently caused, it may impute an appropriate income to him or her. *See In re Florio, supra.*

 In the present case, the Court finds that the Debtor has willfully chosen not to seek gainful employment and that he most likely could find such employment if he chose to. Consequently, we will impute an appropriate income to him for the purposes of determining whether he has the ability to pay the $28,618.55 money judgment to Marla.

During and for a short time after his marriage to Marla, the Debtor derived his income from his own business, a sort of clearing house of damaged automobiles for insurance companies called the Springfield Salvage Pool (the "Pool"); a "side-business" in which he bought and sold used cars; and a small dairy and beef operation conducted rent-free on his mother's farm. In contrast, the Debtor currently does not have any income and has not had any for close to eight (8) months. His business closed down sometime in May of this year, leaving him with negligible assets and substantial liabilities ($200,000.00 according to his testimony), and he cannot use his mother's farm until at least January because his mother rented the farm land to someone else until then. There was no

---

**3.** It is the Court's understanding that Joyce Burton's business, Blast–N–Powder, involves applying specialty coatings on metal, such as stock car frames and fences.

testimony as to the status of the Debtor's side business, but it is assumed that he no longer derives any income from it.

The Debtor contends that he has not sought, and does not currently seek, gainful employment because he has to "help out" at his wife's business, because he is waiting until his mother's farm is available to start his farming operation, and because a full-time job would prevent him from seeing his children at the time currently scheduled for visitation—Wednesdays from 3:00 to 6:00 p.m. We do not find these reasons persuasive.

First, the Court does not believe that the Debtor's (free) labor is necessary to Joyce Burton's business. She testified that he only helps out "sometimes," and that she could pay an employee to perform the duties currently carried out by the Debtor or do them herself after school. Additionally, allowing the Debtor to use his unpaid services to Blast–N–Powder as an excuse not to seek gainful employment and thereby claim an inability to pay would be tantamount to subsidizing the Debtor's wife's business, from which he derives little or no benefit (inasmuch as it has yet to turn a profit), at the expense of the Plaintiff.

Second, the Court finds no reason that the Debtor could not have sought employment during the time his mother's farm was rented to someone else. Eight months is simply too long to wait idly for the next income opportunity. Furthermore, under the totality of the circumstances test, the Court may consider the income from the farming operation he intends to start in January as a "reasonably reliable future financial resource."

Finally, we find the Debtor's third reason for not seeking employment without merit. This is not to say that we expect the Debtor to forego spending time with his children in order to obtain employment. The Court only challenges the Debtor's characterization of these activities as mutually exclusive. It is difficult to imagine that the Debtor could not either find an employer willing to accommodate a minor scheduling request or arrange for a different three-hour block of time to visit with his children outside of business hours. Further, the Debtor has produced no evidence that the Plaintiff would not accommodate such a request.

Because no definitive evidence was adduced regarding the Debtor's monthly income prior to the demise of his salvage business and cessation of farming activities, the Court does not have an exact number to use as a basis for imputing an appropriate income and thereby determining whether he has the ability to pay. *See In re Florio,* 187 B.R. at 657 (using debtor's most recent salary as basis for determining her ability to pay under § 523(a)(15)). However, the Court can estimate what the Debtor could reasonably expect to earn considering his age, abilities, and experience. The Debtor is 42 years old, in good health, and has a high school education. He has considerable experience in the auto salvage business, having run his own salvage "pool" for fifteen years. The Debtor is also familiar with farming operations inasmuch as he grew up on a farm and carried on a small dairy and beef operation on his mother's farm. Based on these qualifications, the Court concludes that the Debtor could earn, at the minimum, a gross salary of $2,000.00 a month, which is approximately what the Plaintiff, Marla Burton, currently earns with similar qualifications. (She is 34 years old, has a high school education, and worked with the Debtor at his business and on the farm.)

Our estimate of $2,000.00 a month is conservative, considering that the Debtor is older and more experienced than Marla, but even at this figure, the Court finds that the Debtor has the (imputed) ability to pay the money judgment. According to the Debtor's schedules, his testimony and the testimony of Joyce Burton, the Debtor and his wife have a gross monthly income

of approximately $2,195.00 [4] and expenses of $2,840.00. An additional $2,000.00 a month in gross income would be sufficient to close the Debtor's budget shortfall *and* make meaningful payments on the money judgment held by Marla. The payments might not be large, but considering the fact that Marla's expenses exceed her income by $100.00 to $500.00 a month, any payment over $100.00 (which the Court believes the Debtor "has the ability" to make) is more than nominal and sufficient to justify a finding of nondischargeability.

■ The Debtor also fails to establish that discharging the debt would be more beneficial to him than detrimental to the Plaintiff, the second alternative under § 523(a)(15)(A). The Debtor fails for two main reasons. First, as the discussion above demonstrates, the Debtor has the imputed ability to pay (i.e., a positive net cashflow) and the Plaintiff currently experiences income *shortfalls* of $100.00 to $500.00 a month. A discharge of the debt would conceivably allow the Debtor to raise his standard of living while the Plaintiff is barely treading water. The Court cannot allow this result, particularly in light of the fact that Marla is the primary custodian of and must provide for and care for the parties' two minor children (ages 5 and 10).

Second, a *true* comparison of the Debtor's and the Plaintiff's circumstances reveals a terrible inequity that a discharge of the money judgment would only exacerbate. In his closing arguments, the Debtor's counsel stated that the parties' financial situations were roughly equal. Both are struggling to make ends meet, they live on small incomes and have expenses that outstrip their income by $200.00 to $500.00. However, this comparison fails to appreciate one striking difference between the Debtor and the Plaintiff—the Plaintiff works for a living and the Debtor doesn't. The Plaintiff sought employment soon af-

ter the parties were separated in March 1997, whereas the Debtor hasn't worked since May 1999. Discharging the debt owed to the Plaintiff would have the unconscionable result of rewarding the Debtor for his laziness and punishing the Plaintiff for her industriousness.

Furthermore, the Plaintiff testified that she intends to use the money from the judgment to buy a house, which is a reasonable desire in light of the fact that the Debtor was awarded the main residence pursuant to the Judgment of Dissolution. Discharging the debt owed to her would prevent her from fulfilling that desire for some time to come, if not forever. On the other hand, the Debtor had the chance to own his own home and lost it.

For the reasons stated herein, the Court determines that under § 523(a)(15) the $28,618.55 money judgment awarded to Marla Burton pursuant to the Judgment of Dissolution is nondischargeable.

As a final comment, the Court notes that it can only hope that its decision here can begin to close the book on what appears to be a long and painful chapter in the Debtor's and Marla's lives. Recalling the words of Chief Bankruptcy Judge Koger:

> The problem with that section [§ 523(a)(15)] is that it requires bankruptcy courts to revisit, in excruciating detail, the anger, the bitterness, and the pain which the Debtor and the Debtor's former spouse have felt and now feel. In the instant case [and true here as well], one could almost see the old wounds being reopened and new and more expensive scars being inflicted upon both parties.

*Silvers v. Silvers (In re Silvers)*, 187 B.R. 648, 648 (Bankr.W.D.Mo.1995).

■ The cornerstone of bankruptcy law is the concept of the fresh start. Once a debtor obtains his or her discharge and the case is closed, the Debtor can start

---

4. An amount representing Joyce Burton's monthly salary of $1,850.00 plus the $3,500.00 a year she earns from teaching summer school and $650.00 a year she earns for writing grants.

anew with a clean financial, and, in many respects, emotional slate. In this case, although the Debtor will remain obligated on a number of tax debts, and the Debtor's ex-spouse may herself need to take steps to protect herself from potential liability on the NationsBank loan, the Court sincerely urges the parties to capitalize on the opportunity here for a fresh start, and to put an end to a long, painful, and expensive chapter of their lives.

For the reasons stated herein, it is therefore,

**ORDERED** that the relief requested in Count I of Plaintiff's Complaint for a Determination Excepting a Debt Owing to Marla Burton From Discharge Under 11 U.S.C. § 523 is GRANTED to the extent that the $28,618.55 money judgment awarded to Marla Burton pursuant to the Judgment of Dissolution is hereby determined to be nondischargeable under 11 U.S.C. § 523(a)(15), and DENIED to the extent that the NationsBank debt is hereby determined not to be nondischargeable under 11 U.S.C. § 523(a)(15). It is

**FURTHER ORDERED** that the relief requested in Count II of Plaintiff's Complaint for a Determination Excepting a Debt Owing to Marla Burton From Discharge Under 11 U.S.C. § 523 is DENIED.

**SO ORDERED.**