Judith Ann BURNS, Appellant,

v.

James Thomas BURNS, Respondent.

No. ED 83917.

Missouri Court of Appeals,
Eastern District,
Division Five.

May 17, 2005.

Marion H. Pines, St. Louis, MO, for appellant.

Christopher R. Wegner, Michele Hammond (co-counsel) St. Louis, MO, for respondent.

## OPINION

GLENN A. NORTON, Judge.

The trial court denied a motion for contempt filed by Judith Burns ("Mother"), in which she alleged that James Burns ("Father") had failed to pay certain obligations encompassed in the parties' dissolution judgment. Mother appeals that portion of the judgment relating to Father's obligation to pay for the student loan debt of their son, Kevin Burns ("Son"). We reverse and remand.

## I. BACKGROUND

The parties dissolved their marriage in 1991, at which time Son was attending college. The parties' two children were placed primarily under Mother's custody, and Father was ordered to pay child support and maintenance. In the dissolution judgment, under a section labeled "Child Support," the court ordered Father to pay some of the student loan debt incurred by Son:

> In lieu of payment of [Son]'s college tuition and expense past, present and future, [Father] shall repay the balance of [Son]'s Guaranteed Student Loans incurred to date and for the loans he shall incur to complete four (4) years of college, not to exceed $2,625.00 for each year. Payment shall be per the terms of such loans and shall commence after the time that [Son] ceases to be a full-time student.

The following year, Father filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. In 1993, the bankruptcy court held that certain debts

that Father owed to Mother and her attorney as a result of the dissolution proceeding were not dischargeable because the judge in the dissolution proceedings intended them to operate as maintenance. *See In re Burns*, 149 B.R. 578, 581–83 (Bankr.E.D.Mo.1993) (citing 11 U.S.C. section 523(a)(5)).[1] Some of Father's other debts, however, were discharged.

In 2003, Mother filed the instant motion for contempt in the dissolution case in state court. She alleged that Father owed her maintenance and child support and had failed to repay the student loan debt as required under the dissolution judgment. In response to the motion, Father simply denied the allegations without raising any affirmative defenses. The trial court held a hearing at which Mother, Father and Son testified. Father testified that his obligation to pay the student loan debt had been discharged during his bankruptcy, and the trial court admitted into evidence certain documents relating to the bankruptcy. None of this evidence is included in the record on appeal, so we cannot determine which of Father's debts were purportedly discharged during those proceedings and must rely on information included in the reported decisions of the bankruptcy court from 1993 and 2004. *See In re Burns*, 149 B.R. 578 (Bankr.E.D.Mo. 1993); *In re Burns*, 306 B.R. 274 (Bankr. E.D.Mo.2004). Further, it appears that neither party offered any evidence or made any argument about whether the student loan debt was nondischargeable. It was undisputed that Mother and Son were both aware of Father's bankruptcy, but did not object to the discharge of the student loan debt during the bankruptcy

proceedings. It was also undisputed that Son had incurred at least $2,625 in student loan debt each year during his four years of college and that Father had not made any of the payments or reimbursed Son or Mother for the student loan debt.

The trial court denied Mother's motion for contempt, finding, among other things, that Father had listed Son as a creditor with respect to the student loan debt during Father's bankruptcy and that Son had been "sent formal notice by the Bankruptcy Court," but neither he nor Mother took any action "to prevent the discharge" of the student loan debt. The trial court concluded that "[b]ased upon the evidence adduced, the Court finds that [Father]'s obligation to repay the student loans of [Son] was discharged" by Father's bankruptcy. It is this conclusion that Mother challenges on appeal.[2] In her post-trial motion, Mother argued, apparently for the first time, that the trial court could still "make its own determination as to whether the [student loan debt] was an order for child support" that was not discharged by Father's bankruptcy.

Following the contempt judgment, Mother and Son filed a motion in the bankruptcy court, seeking to reopen Father's bankruptcy case. *See In re Burns*, 306 B.R. at 275–76. They sought to file an adversary complaint to have the bankruptcy court determine that the student loan debt is in the nature of support and is therefore excepted from discharge under section 523(a)(5). *Id.* at 276. But the bankruptcy court denied their motion, finding that "the *Rooker–Feldman* doc-

---

1. All federal statutory references are to Title 11 of the United States Code (1993). Federal rule references are to the Federal Rules of Bankruptcy Procedure (2003), and state rule references are to the Missouri Court Rules (2003).

2. The trial court also found insufficient evidence of unpaid arrearages of maintenance and insufficient evidence that Father intentionally failed to pay attorney fees. Mother does not challenge these rulings.

trine would deprive [the bankruptcy court] of subject matter jurisdiction over [the] proposed adversary complaint."[3] *Id.* at 277 (citing *Gisslen v. City of Crystal,* 345 F.3d 624, 627 (8th Cir.2003)). The bankruptcy court indicated that the state trial court had "explicitly found that [the student loan debt] was discharged at the conclusion of [Father's] bankruptcy case" and that the only way it could rule in favor of Mother and Son was if it were to find that the state court had wrongly decided that the student loan debt was discharged. *In re Burns,* 306 B.R. at 278. Although the bankruptcy court hinted that the premise for the state court's decision was erroneous,[4] it concluded that because of the *Rooker–Feldman* doctrine, Mother and Son must press their claim (that the state court erred in finding that the student loan debt was discharged) before this Court. *Id.*[5]

## II. DISCUSSION

 Our review of this court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We must affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Kaelin v. Kaelin,* 988 S.W.2d 657, 660 (Mo.App. E.D.1999). We view the evidence and reasonable inferences from that evidence in a light most favorable to the judgment and disregard contrary evidence. *Id.* Unless the trial court abused its discretion in ruling on this motion for civil contempt,[6] we will not reverse the judgment. *Id.*

---

3. The bankruptcy court described this doctrine as holding "that lower federal courts do not have subject matter jurisdiction to review an order issued by a state court." *In re Burns,* 306 B.R. at 277 (citing *Gisslen,* 345 F.3d at 627). Further, "the *Rooker–Feldman* doctrine deprives the bankruptcy court of subject matter jurisdiction over a claim that attacks a state court judgment relating to a dischargeability issue provided that the state court had subject matter jurisdiction over the claim." *In re Burns,* 306 B.R. at 277. This doctrine "applies not only to issues that were directly before a state court but also any issue that is inextricably intertwined with the state court ruling." *Id.* at 278.

 The bankruptcy court found that the state court had concurrent jurisdiction to determine whether the student loan debt was excepted from discharge under section 523(a)(5). *Id.* at 277. And it rejected three arguments as to why the *Rooker–Feldman* doctrine should not apply, namely that Son was not a party to the motion for contempt, that the issue of dischargeability was not before the state court, and that the bankruptcy court is in a better position to decide the issue. *Id.* at 277–78.

4. The bankruptcy court stated that "[i]t appears that the State Court premised its conclusion that [the student loan debt] was discharged on the fact that [Son] did not bring an action to determine whether the obligation was excepted from discharge as child support under [section] 523(a)(5)." *In re Burns,* 306 B.R. at 278 n. 1. It then advised that "a creditor may seek a determination that a particular debt was excepted from discharge under [section] 523(a)(5) at any time." *Id.* (citing Fed. R. Bankr.P. 4007(b)).

5. The bankruptcy court further stated that it would not exercise its wide discretion to reopen Father's case because the proposed adversary complaint was "facially deficient," again, based on the *Rooker–Feldman* doctrine. *In re Burns,* 306 B.R. at 279.

6. A party makes a *prima facie* case of civil contempt by proving that the obligor has failed to make payments as required under a judgment. *Nance v. Nance,* 880 S.W.2d 341, 346 (Mo.App. E.D.1994). The other party then bears the burden of proving an inability to make the payments and that "being in that position did not occur intentionally and contumaciously." *Id.; see also Brown v. Brown,* 670 S.W.2d 167, 168–71 (Mo.App. W.D.1984) (in action for contempt for failure to pay child support, former spouse's evidence of bankruptcy and financial problems "was probative of affirmative defense of inability to pay").

"Child support and maintenance obligations have a 'special status' in bankruptcy proceedings, as they are not dischargeable." *Timmons v. Timmons*, 132 S.W.3d 906, 915 (Mo.App. W.D.2004); *see also* 11 U.S.C. section 523(a)(5). Divisions of marital property, on the other hand, do not necessarily possess the same special status. *See, e.g., In re Williams*, 703 F.2d 1055, 1056–57 (8th Cir.1983). State courts and federal bankruptcy courts have concurrent jurisdiction to determine whether a certain obligation constitutes a maintenance or support debt owed to a former spouse or child, and thus is excepted from discharge under section 523(a)(5). *Timmons*, 132 S.W.3d at 915; *In re Burns*, 306 B.R. at 277. Although only the bankruptcy court can decide whether to *grant* a discharge in bankruptcy, the *effect* of such a discharge may be determined by any court in which the issue is properly raised. *Timmons*, 132 S.W.3d at 915. Nevertheless, the state court's original characterization of an award in its divorce decree is not binding on a bankruptcy court. *In re McKinnis*, 287 B.R. 245, 251 (Bankr. E.D.Mo.2002). Federal bankruptcy law— not state law—governs the determination of dischargeability. *Timmons*, 132 S.W.3d at 915; *In re Williams*, 703 F.2d at 1056–57.

The party objecting to a discharge bears the burden of proving, by a preponderance of the evidence, every element of an exception to dischargeability under section 523(a). *In re Waltner*, 271 B.R. 170, 174 (Bankr.W.D.Mo.2001) (citing *Grogan v. Garner*, 498 U.S. 279, 286–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). Whether an award in a dissolution judgment can properly be characterized as a "nondischargeable maintenance or support debt 'depends primarily on the function the award was intended to serve at the time it was awarded.'" *Timmons*, 132 S.W.3d at 915 (quoting *In re Burton*, 242 B.R. 674, 679 (Bankr.W.D.Mo.1999)). We discern the dissolution court's intent based on the totality of the circumstances at the time it made the award. *Timmons*, 132 S.W.3d at 915; *Burton*, 242 B.R. at 679. Several factors are relevant, including: (1) the language and substance of the dissolution judgment itself, (2) the relative financial circumstances of the parties at the time of the dissolution and (3) " 'the degree to which the obligation enables the recipient to maintain daily necessities.' " *Timmons*, 132 S.W.3d at 915 (quoting *Burton*, 242 B.R. at 679).

Mother argues that the court erroneously declared or applied the law by concluding that the student loan debt was discharged by Father's bankruptcy. Specifically, she contends that the evidence showed that this debt was in the nature of child support, making it nondischargeable under section 523(a)(5), and that a challenge to the dischargeability of a debt may be raised at any time, even after the debtor is discharged. Father argues that the issue of dischargeability rests with the bankruptcy court and that Mother waived this argument by failing to raise it before the trial court.

## A. The Trial Court was an Appropriate Forum to Address Dischargeability

Father argues that the trial court's finding that the student loan debt was discharged presents this Court with "no reviewable issue," citing *Price v. Price*, 921 S.W.2d 668 (Mo.App. W.D.1996). There, the trial court had stated in a dissolution decree that certain debts would be nondischargeable in bankruptcy. *Id.* at 671. On appeal, one of the parties argued that the trial court abused its discretion by including such language. *Id.* at 674. The Western District noted that "[a] state court's characterization of an award as

support or as part of a property settlement is not binding on a bankruptcy court" and was "significant only in determining whether the court intended the awards to function as support." *Id.* at 647–75. Since a bankruptcy court would not be bound by the characterization, and Missouri law did not require the trial court to characterize its awards one way or another, the court concluded that the trial court's statement had "no ultimate effect" and presented "no reviewable issue." *Id.*

Here, however, the trial court's statement was more than an indication of intent; it was a specific finding made in the context of determining the effect of Father's prior discharge in bankruptcy. Under these circumstances, the trial court's conclusion about whether the debt was discharged does have an ultimate effect and presents a reviewable issue. As noted above, when the issue is properly raised before a state court, it has jurisdiction to determine the effect of a discharge and to decide whether an obligation is in the nature of child support, thereby meeting the exception from discharge under section 523(a)(5). *Timmons,* 132 S.W.3d at 915.

## B. The Basis for the Trial Court's Ruling is Unclear

The sole basis for the trial court's ruling with respect to Father's non-payment of the student loan debt was the discharge of the debt in bankruptcy. In that regard, the trial court concluded that

"[b]ased upon the evidence adduced, the Court finds that [Father]'s obligation to repay the student loans of [Son] was discharged" by Father's bankruptcy. From this finding, and without knowing what evidence was presented in the contempt proceeding regarding the bankruptcy, we cannot determine whether the trial court denied Mother's motion for contempt because (1) neither Mother nor Son objected to the discharge of the student loan debt during Father's bankruptcy proceedings, (2) Mother simply failed to argue or prove that the student loan debt met the exception to dischargeability under section 523(a)(5), or (3) the trial court believed that the student loan debt was not in the nature of child support and therefore was properly discharged in bankruptcy. The bankruptcy court surmised that the trial court used the first rationale, while Father argues that it used the second, and Mother's arguments primarily relate to the third rationale. Based on the record, we simply cannot tell.[7]

If the trial court intended to use the first rationale and found that the student loan debt had been discharged based on Mother and Son's failure to object during Father's prior bankruptcy proceeding, then it misapplied the law and abused its discretion. As the bankruptcy court indicated, a creditor may seek a determination that a certain debt "was excepted from discharge under [section] 523(a)(5) at any time." *In re Burns,* 306 B.R. at 278 n. 1; *see also* Fed. R. Bankr.P. 4007(b).[8]

---

7. The parties' pleadings were of little assistance to the trial court in framing the issues, as neither party expressly raised the issues of whether the student loan debt had been discharged in bankruptcy or whether it met one of the exceptions to dischargeability under section 523(a). That is not to say, however, that one or both of these issues might not have been tried by the implied consent of the parties. *See* Rule 55.33(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be

treated in all respects as if they had been raised in the pleadings."); *Wallace v. Grasso,* 119 S.W.3d 567, 575–76 (Mo.App. E.D.2003) (noting that such implied consent must be based on evidence that relates solely to the proposed new issue and is not relevant to other issues already in the case).

8. Under the Federal Rules of Bankruptcy Procedure, both debtors and creditors are entitled to "file a complaint to obtain a determination of the dischargeability of any debt."

As to the second rationale, it is simply not clear from the record whether Mother adequately raised and proved any exception to dischargeability and, until clarified by the trial court, we cannot exercise meaningful appellate review as to whether the motion for contempt was properly denied on this basis. Clarification of this issue also might impact Mother's ability to address the merits of her argument in the bankruptcy court.[9] Similarly, as to the third rationale, we cannot review whether there is a factual basis in the record for finding that the student loan debt had been discharged and was not in the nature of child support without a more complete record on appeal.[10] The trial court is in a better position to determine whether Mother properly raised the exception to dischargeability under section 523(a)(5)

and, if so, whether she met her burden of proving every element of that exception by a preponderance of the evidence. Therefore, remand is necessary.

## III. CONCLUSION

The judgment is reversed, and the case is remanded. We direct the trial court to clarify its ruling with respect to the student loan debt and, if necessary, hold further proceedings consistent with this opinion.

GEORGE W. DRAPER III, C.J. and CLIFFORD H. AHRENS, J. concurring.

Rule 4007(a). Such complaints, other than those filed under section 523(c), "may be filed at any time." Rule 4007(b). The Advisory Committee Notes to this rule specifically state that "[s]ubsection (b) does not contain a time limit for filing a complaint to determine the dischargeability of a type of debt listed as nondischargeable under [certain statutory provisions including section 523(a)(5) ]."

9. If the trial court used the second rationale, then the bankruptcy court should be able to render a decision on the dischargeability issue without conflicting with a state court judgment. *See In re Burns*, 306 B.R. at 278 (finding that the state trial court explicitly found that the student loan debt was discharged during Father's bankruptcy case and that in order to find such debt nondischargeable under section 523(a)(5), it would have to say that the state court wrongly decided the issue).

10. Given the language and substance of the dissolution judgment, Mother may be correct that the student loan debt was in the nature of child support and was therefore not discharged in Father's bankruptcy based on section 523(a)(5). While courts often consider obligations to pay college or educational expenses to be excepted from discharge because they are in the nature of support, whether

such an obligation was intended to function as support is a question of fact. *See, e.g., Draper v. Draper*, 790 F.2d 52, 53–54 (8th Cir.1986); *Boyle v. Donovan*, 724 F.2d 681, 682–83 (8th Cir.1984). As indicated by the Bankruptcy Appellate Panel of the First Circuit, the "determination that an obligation constitutes (or does not constitute) support for [section] 523(a)(5)'s purposes is a case-specific, factual determination. The critical issue is the function the (court's) award or the (parties') agreement was intended to serve." *In re Hale*, 289 B.R. 788, 791 (1st Cir.BAP2003) (citations omitted). The court "recognize[d] that most courts addressing the issue [of] whether tuition responsibility agreements between divorced spouses create obligations excepted from discharge under [section] 523(a)(5) have held that they do." *Id.* at 798 n. 32. But it found those decisions to be case specific, noting that "the deciding courts uniformly analyze the facts and circumstances extant at the obligation's creation in reaching their decisions." *Id.* Nevertheless, under "the peculiar state of the record" in that case (where the mother adopted the facts set forth in the father's summary judgment motion), the court found that it was clear "that the obligation to pay education expenses was sourced in an intention to settle property division issues, rather than to supply support for [their child]." *Id.* at 790, 798.