**ALTICOR, INC., and Quixtar, Inc., Plaintiffs,**

v.

**Harold W. GRISSUM, Defendant–Appellant,**

**and**

**Joyce C. Soldi, Defendant–Respondent.**

**No. 27063.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 28, 2006.

Mark C. Fels, Yates, Mauck, Bohrer, Elliff & Croessmann, Gregory J. Smith, Gregory J. Smith, P.C., David E. Schroe-der, David Schroeder Law Office, P.C., Springfield, for Appellant.

Raymond I. Plaster, Moon, Plaster & Sweere, Springfield, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

The question presented by this appeal is whether the trial court misapplied federal bankruptcy law when it ruled that "Wife's" debt to "Husband" (arising out of the parties dissolution case) was in the nature of a property settlement and was not alimony, maintenance or support.[1] In this instance, the trial court's classification of Wife's debt as a "property settlement" necessarily meant the subject debt was discharged by Wife's 1999 federal bankruptcy case; consequently, the trial court found that Husband's garnishment filings were not viable and it ordered the circuit clerk to return to Wife any monies held by him pursuant to Husband's garnishment efforts.

Husband charges the trial court misapplied federal bankruptcy law when it held the subject debt was in the nature of a property settlement and thus a dischargeable debt. This court agrees. Accordingly, we reverse and remand.

## STANDARD OF REVIEW

Appellate review of a trial court's judgment is governed by the well-known standards of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). *Burns v. Burns*, 164 S.W.3d 99, 102 (Mo.App.2005). Thus, we will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 102[1].

1. This is not the first appearance of Harold W. Grissum ("Husband") and Joyce C. Soldi ("Wife") in this court. *See Grissum v. Soldi,* 87 S.W.3d 915 (Mo.App.2002)(*Grissum I*), and *Grissum v. Soldi,* 108 S.W.3d 805 (Mo.App.2003)(*Grissum II*). As we did in *Grissum II,* we refer to the parties as "Husband" and "Wife" in attempts at clarity, even though their marriage was dissolved in January 1990. *Id.* at 807 n. 1.

## FACTS

The marriage of Husband and Wife was dissolved January 3, 1990. *Grissum II,* 108 S.W.3d at 807. (*See* n. 1). The decree incorporated a "Property Settlement and Separation Agreement" signed by Husband and Wife. *Id.* Part of this agreement awarded Wife an "Amway Distributorship." *Id.* The agreement further provided that Wife would pay Husband "$3,000 per month starting on January 31st, 1990, and continuing on or before the last day of each month thereafter until the death of [H]usband." *Id.*

At the time of the dissolution, the couple's monthly income from the Amway business was approximately $10,000. This was their sole source of income as Husband had been fired in 1983 from his job with State Farm Insurance for being an Amway distributor. For several years after the dissolution, Wife generally made the $3000 monthly payments to Husband when due. In January 1999, however, Husband filed a garnishment action to collect past due sums under the 1990 judgment. By April 1999, Husband's garnishment claim totaled $112,000.[2]

Wife filed a Chapter 7 bankruptcy petition in Florida in 1999. At the time, she was a resident of that state. In her bankruptcy filing, Wife listed "court ordered alimoney [sic]" to Husband of $126,000 as one of her debts. Husband filed a "proof of claim" in Wife's bankruptcy case. In that document, Husband alleged Wife owed him over $114,000 for "alimony, maintenance, or support." Wife received a discharge in bankruptcy on December 7,

1999, that "released [her] from all dischargeable debts."

Wife made no further voluntary payments after the Florida bankruptcy case ended. Accordingly, Husband continued his garnishment efforts through the circuit court of Greene County, Missouri. Wife responded with motions to quash Husband's collection efforts. This led Amway to bring a declaratory judgment suit in November 2003 in which it sought a ruling as to the respective rights of the parties. The issue about the nature of the $3000 monthly payment, i.e., whether it was for support or whether it was part of a property settlement, was squarely placed before the trial court via Wife's six-count amended cross-claim against Husband. This was an issue tried by the parties without objection.[3]

The trial court ruled in Wife's favor, finding that the debt created by the dissolution judgment was in the nature of a property settlement. The essence of the trial court's ruling was that the parties intended their agreement, i.e., the Amway business to Wife and payment to Husband of $3000 per month so long as he lived, as settlement of their marital property interests in that business; accordingly, the court ruled the debt was discharged by Wife's bankruptcy filing.[4] Husband's appeal to this court followed.

## DISCUSSION AND DECISION

■ Although Husband has briefed many alleged trial court errors, one issue is dispositive. The critical question is: What did the parties intend when they agreed that Wife would pay $3000 per month to Husband? To answer this ques-

---

**2.** Since 1999, Husband has filed nineteen garnishments and collected $234,000.

**3.** As best we can tell, in his brief on appeal, Husband makes an argument that Wife failed to timely raise the issue of dischargeability. Any such contention is without merit.

**4.** In making this determination, the trial court used a seven-factor test enunciated in *In re Benz,* 318 B.R. 889 (Bankr.M.D.Fl.2004). Further facts will be provided when discussing the relevant factors used by courts in ruling on the nature of a debt.

tion and to understand why it is critical, we look to federal bankruptcy law.

Under a Chapter 7 bankruptcy discharge (such as Wife was granted here), a debtor was not relieved from the debts provided for in section 523 of Title 11. 11 U.S.C. § 727(b).[5] Pursuant to that section, a Chapter 7 bankrupt could not escape debts that were in the nature of alimony, maintenance, or support for a spouse, former spouse, or child, i.e., they were nondischargeable. 11 U.S.C. § 523(a)(5). On the other hand, property settlements were capable of being discharged. 11 U.S.C. § 523(a)(15).[6]

■ State courts and federal courts have concurrent jurisdiction to decide if a debt was intended as alimony, maintenance, or support or was intended as part of a property settlement. *Timmons v. Timmons*, 132 S.W.3d 906, 915[11] (Mo. App.2004). "Federal bankruptcy law governs in making this determination." *Id.*

■ Under bankruptcy law, it is generally stated that the intent of the parties at the time the agreement is executed and the function the payment serves will determine whether a debt under that agreement is in the nature of alimony, maintenance, or support.[7] *In re Brody*, 3 F.3d 35, 38[3] (2nd Cir.1993); *In re Gianakas*, 917 F.2d 759, 762[4] (3rd Cir.1990); *In re Morel*, 983 F.2d at 105; *In re Sampson*, 997 F.2d 717, 722–23 (10th Cir.1993); *Cummings v.* *Cummings*, 244 F.3d 1263, 1265[6] (11th Cir.2001). In determining the parties' intent, courts must go beyond the label attached to a particular debt to examine whether the payment was actually in the *nature* of alimony, maintenance, or support. *Brody*, 3 F.3d at 38[7]; *Gianakas*, 917 F.2d at 762[3]; *Sampson*, 997 F.2d at 722; *Cummings*, 244 F.3d at 1265[5]; *Burns*, 164 S.W.3d at 103; 8A C.J.S. *Bankruptcy* §§ 329–330 (1988); 4 COLLIER ON BANKRUPTCY P. 523.11[2]. This means that state court designations or classifications do not control; rather, the result reached when federal bankruptcy law is applied controls classification, that is, whether a debt shall be viewed as part of a property settlement or falls in the category of alimony, maintenance or support. *Brody*, 3 F.3d at 39[11]; *In re Williams*, 703 F.2d 1055, 1057–58 (8th Cir.1983). As aptly stated by one federal court, "if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck." *In re Sorah*, 163 F.3d 397, 401 (6th Cir.1998).

In deciding what the parties intended and the function the payment was to serve, courts have considered a variety of factors. *See, e.g., Brody*, 3 F.3d at 38 (citing two cases listing several factors); *Gianakas*, 917 F.2d at 762 (noting 15–factor test used by other courts; used "three principal indicators").[8] The "intent and function" test that Missouri appellate courts have used is

**5.** Wife received her discharge in 1999. The federal statutory references are to the 1994 version of the statutes. Although section 523 was amended before Wife's discharge, those changes did not affect the pertinent provisions of the statute.

**6.** After the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, property settlements covered by section 523(a)(15) are no longer dischargeable. *See* 4 COLLIER ON BANKRUPTCY PP. 523.11, 523.21 (Alan N. Resnick and Henry J. Sommer eds., 15th Edition Rev., 2006).

**7.** Because the dissolution court merely accepted the parties' negotiated agreement and incorporated it into the judgment, we must examine the intent of the parties rather than the intent of the court. *Richardson v. Edwards*, 127 F.3d 97, 101 (D.C.Cir.1997); *In re Morel*, 983 F.2d 104, 105 n. 3 (8th Cir.1992); *In re Horner*, 222 B.R. 918, 921 (Bankr. S.D.Ga.1998).

**8.** *See also, In re Jestice*, 168 Fed.Appx. 39 (6th Cir. 2006), 2006 U.S.App. LEXIS 6863 (9 factors); *Shaver v. Shaver*, 736 F.2d 1314, 1316–17 (9th Cir.1984)(4 factors); *Cummings,*

an examination of the totality of the circumstances at the time the award was made, considering three main factors, *to wit,* (1) the language and substance of the agreement, (2) the parties' relative financial circumstances at the time of dissolution, and (3) the degree to which the obligation enables the recipient to maintain daily necessities. *Burns,* 164 S.W.3d at 103[10]; *Timmons,* 132 S.W.3d at 915 (citing *In re Burton,* 242 B.R. 674, 679 (Bankr.W.D.Mo.1999)).[9]

Although many courts use the term "test" to describe what to consider when determining the parties' intent and the function the payments were meant to serve, most tests contain nonexclusive factors and courts are free to consider *all relevant* evidence, direct or circumstantial, that sheds light on the subject. *See Brody,* 3 F.3d at 38[4]; *In re Benich,* 811 F.2d 943, 945 (5th Cir.1987); *Jestice* at 43; *Williams,* 703 F.2d at 1057–58; *Cummings,* 244 F.3d at 1265–66; 8A C.J.S. at § 330. No matter which "test" is used, the utilized factors must answer the ultimate question of whether the parties intended the payment to function as support or a property settlement.

■ Before reviewing the trial court's findings and ultimate ruling, we note that

Husband's and Wife's agreement describes the debt as a property settlement. That is not conclusive, however. "Although a written manifestation of agreement is persuasive evidence ... the label that the parties attach to a payment is not dispositive; the court must look to the substance, and not merely the form, of the payments." *Brody,* 3 F.3d at 38[7].

■ We further note that Wife testified in 2005 that she intended the debt to be a "property settlement" and not for Husband's support. However, that "rearview" assertion is likewise not conclusive. The intent of the parties "does not turn on one party's post hoc explanation as to his or her state of mind at the time of the agreement, even if uncontradicted." *Sampson,* 997 F.2d at 723[8].

■ The trial court here used seven factors in making its decision.[10] We agree that these factors sufficiently encompass the totality of the circumstances and adequately address the issue presented, namely, whether Husband and Wife intended the $3000 monthly payment to serve as Husband's support. *See* 8A C.J.S. at § 330; 1–6 COLLIER FAMILY LAW AND THE BANKRUPTCY CODE P. 6.04. The problem we find is that the trial court misapplied the law in its analysis of the relevant factors.[11]

244 F.3d at 1265–66 (noting relevant factors to consider); *In re Coffman,* 52 B.R. 667, 674–75 (Bankr.D.Md.1985) (18 factors); 1–6 COLLIER FAMILY LAW AND THE BANKRUPTCY CODE P 6.04 (2005) (noting 11 factors courts have considered); 8A C.J.S. *Bankruptcy* § 330.

**9.** As the *Burton* court noted, however, these three factors are nonexclusive, i.e., the courts consider the *totality of the circumstances* existing at the time of the agreement or decree. *Burton,* 242 B.R. at 679.

**10.** The trial court relied on in *In Re Benz,* 318 B.R. 889. The factors are: (1) whether the debt is subject to death or remarriage; (2) whether it is payable in a lump sum or periodically; (3) whether it is modifiable; (4) whether it is enforceable through contempt

proceedings; (5) whether the payment is derived from an equal division of the marital estate; (6) whether other provisions provide for support of minor children; and (7) whether alimony or maintenance was awarded via a separate provision. *Id.* at 893.

**11.** In reviewing discharges involving section 523 exceptions, federal courts generally consider the matter as a mixed question of law and fact and utilize a clearly erroneous standard for fact questions and a *de novo* review for legal questions. *Gianakas,* 917 F.2d at 762; *In re Kline,* 65 F.3d 749, 750[1, 2] (8th Cir.1995); *Cummings,* 244 F.3d at 1265[1]. In *Murphy v. Carron,* the Missouri Supreme Court stated that "use of the words *de novo* and *clearly erroneous* is no longer appropriate in appellate review of cases under Rule

■ The first factor is whether the obligation is subject to death or remarriage. The agreement explicitly provided that the payments would continue until Husband died and made no provision for its termination upon remarriage. If an obligation terminates upon the recipient's death, this is consistent with a support obligation. *Shaver*, 736 F.2d at 1316; *Sampson*, 997 F.2d at 723–24; 4 COLLIER ON BANKRUPTCY P. 523.11[6][d]. This factor favors Husband.[12]

The second factor likewise favors Husband in that he was to be paid monthly rather than in a lump sum. Support payments are "generally made directly to the recipient spouse and are paid in installments over a substantial period of time." *Shaver*, 736 F.2d at 1317. Rather than a lump sum payment, installments serve the purpose of allowing a recipient spouse to maintain daily necessities such as food, housing, and transportation. *Gianakas*, 917 F.2d at 763; *Williams*, 703 F.2d at 1057. This factor weighs in Husband's favor.

The third factor is the modifiability of the obligation. As the court correctly noted, the debt was modifiable based on certain future decreases in the Amway profits. Again, this favors Husband.[13] *Sampson*, 997 F.2d at 724; *Richardson*, 127 F.3d at 102. The modification provision is a recognition that the Amway business was to provide support for both parties; in the event profits dropped, Wife's support rights could be protected by modifying the agreement while still providing Husband some support.

■ Another factor in Husband's favor is the fact that no separate provision awarded maintenance to him (Factor 7). "[I]f an agreement fails to provide explicitly for spousal support, a court may presume that a so-called 'property settlement' is intended for support when the circumstances of the case indicate that the recipient spouse needs support." *Shaver*, 736 F.2d at 1316; *see also, Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989); 4 COLLIER ON BANKRUPTCY P 523.11[6][f].

At the time of the dissolution, Husband was 35 years old, he had no job other than Amway, the previous seven years he had worked only on the Amway business, and he had no retirement and no insurance.

73.01." 536 S.W.2d at 32. Because the trial court here *misapplied the law*, whether a federal standard or a state standard of review is used matters not; the result is the same, that is, reversal and remand.

12. The trial court found that this factor favored a property settlement because the Amway business reverted to Husband if Wife died or if she chose to discontinue its operation. The reversionary interest, if viewed in isolation, may indicate a property settlement intent. However, viewed in totality, the fact of reversion indicates support. For instance, if Wife chose to stop working the Amway business, she would receive $3000 per month from Husband. This demonstrates that whoever ran the business, the other party was entitled to compensation for support because this was the parties' *only* source of income at the time of the agreement. Moreover, the right to payment terminated on either party's death. If this were a property right, then that right should survive death. *See, e.g., Morel*, 983 F.2d at 105. However, when one dies, no support is needed. The trial court simply misapplied the law when it found this factor favored a property settlement.

13. The agreement here stated that the parties would "renegotiate" upon certain changes in the financial affairs of the business. The trial court seized on that and found that the agreement was "nonmodifiable" because it did not comply with Missouri state statutes declaring a maintenance obligation must say whether it is modifiable or nonmodifiable (§ 452.335.3). This is a misapplication of the law. As explained earlier, state court designations or classifications do not control the federal bankruptcy determination of whether a payment is *support*. *Brody*, 3 F.3d at 39[11]; *Williams*, 703 F.2d at 1057; *In Re Harrell*, 754 F.2d 902, 905 (11 Cir.1985).

**636**

Wife would receive seventy percent of the income as she would be doing the Amway work, and Husband would receive thirty percent to live on in recognition of the work he spent in building up the distributorship. Husband's "obvious need for support at the time of the dissolution is enough to presume that the obligation was intended as support even when it is otherwise identified in an agreement between the parties as property settlement." *Sampson*, 997 F.2d at 725. The exclusion of other provisions for Husband's support in the agreement, in light of the fact that he obviously needed support, tilts Factor 7 in his favor. The court misapplied the law when it found this factor neutral.

 The court found Factor 4 (enforceability through contempt) and Factor 6 (separate provision for child support) neutral. We agree. Maintenance and property settlements are both enforceable via contempt and no children were born of the marriage.

Arguably, there is one factor weighing in Wife's favor, namely, the Factor 5 "equal split" of the marital estate.[14] However, even if this factor weighs in Wife's favor, it is not enough to outweigh the other four.

Viewing the totality of the circumstances at the time the agreement was made persuades this court that the $3000 monthly payments were intended by the parties as Husband's support. He had nothing to live on other than the Amway profits. He had no future prospects for employment; he actually gave up his career for the Amway business. The agreement, in fact, provided that if Husband built up a separate Amway distributorship to the level that the parties reached while married, his payments would be decreased substantial-

ly. This shows an intent that Husband would not need that support as he would be supporting himself. Had he not been awarded anything, Wife would be making $10,000 per month, while Husband would have no income. All of these circumstances and facts point to the obvious conclusion that the debt of $3000 per month was to serve as support.

The trial court misapplied the law when it found that the $3000 monthly payment was in the nature of a property settlement and dischargeable in bankruptcy. The debt was one of support for Husband that was exempted from Wife's bankruptcy pursuant to 11 U.S.C. § 523(a)(5). The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

BATES, C.J., and BARNEY, J., concur.

---

**14.** This is a dubious proposition. For instance, the parties split two homes and two cars, yet the business was divided 70–30. This simply recognizes that Wife would be

contributing her future work efforts to the business and would continue to build that business, but Husband was entitled to some sort of support.