**Misti L. KINNER, Formerly Isenbletter, Petitioner–Appellant/Cross–Respondent,**

v.

**Michael L. SCOTT, Respondent–Respondent/Cross–Appellant.**

Nos. 27327, 27332.

Missouri Court of Appeals,
Southern District,
Division Two.

March 15, 2007.

Melanie G. Weaver, Clinton, for Appellant.

Seth Shumaker, Kirksville, for Respondent.

Jeff Adams, Clinton, for Guardian Ad Litem.

PHILLIP R. GARRISON, Judge.

Misti L. Kinner ("Mother") appeals the trial court's judgment denying her motion to modify custody, and awarding actual physical custody of D.S. and S.S. (collectively referred to as the "children") to Michael L. Scott ("Father"). Mother contends the trial court erred in: (1) finding that there had been no substantial and continuing change of circumstances regarding the children and Father; and (2) in finding that it was in the best interests of the children to remain in Father's "primary physical custody."[1] Father appeals the trial court's award of attorney's fees and costs to Mother. We affirm the denial of the motion to modify and reverse the award of attorney's fees.

Viewing the evidence in the light most favorable to the trial court's judgment, the evidence reveals the following. On December 19, 2001, Father was awarded "primary physical custody" of both children subject to Mother's visitation rights. On January 16, 2004, Mother picked up the children for a scheduled visitation and took them to her home. The next night, as Mother was giving S.S. a bath, she noticed bruise marks on her buttocks and lower back. Mother took S.S. to the hospital where she was examined by Dr. Scott Turner ("Dr. Turner").

Dr. Turner found two sets of bruises on S.S.'s buttocks and lower back. He determined that one set of bruises was one to three days old, while the other set of bruises was three to seven days old. Dr. Turner did not believe that the bruises were due to normal childhood roughhousing, but were caused by a person striking S.S.

On January 26, 2004, Mother filed a "Motion to Modify Child Custody, Visitation, and Support" ("motion to modify"), and an "Emergency Motion for Temporary Restraining Order" ("temporary motion"). In her motion to modify, Mother contended that there had been a substantial change of circumstances in that: Father had abused S.S. by hitting her on the buttocks and lower back area causing bruises; Father had given S.S. prescription medication without a prescription; and Father had been physically and emotionally abusive towards Mother when the children were being transferred for visitation periods.

On February 13, 2004, after hearing evidence on Mother's temporary motion, the trial court granted Mother's request for temporary physical custody of the children, finding that there were sufficient and substantial safety concerns if the minor children returned to the custody of Father.

Mother's motion to modify was heard on August 26–27, 2004, and the children's guardian ad litem, Jeffery T. Adams, presented further evidence on June 16, 2005. On September 30, 2005, the trial court entered its judgment denying Mother's motion to modify, finding that it was in the best interests of the children to remain in the primary physical custody of Father. Mother was awarded visitation under the

1. The term "primary physical custody" is used by both parties and in the judgment of the trial court. We note that, "[t]he reference to 'primary' physical custody is inappropriate. Section 452.375, permits either sole or joint custody; a parent may no longer be granted 'primary' legal or physical custody." *In re Marriage of Hendrix*, 183 S.W.3d 582, 585 n. 2 (Mo. banc 2006).

original visitation and parenting plan. The trial court ordered that Father pay Mother $3,500 in attorney's fees. Both Mother and Father appeal the judgment of modification. We have consolidated those appeals, and we discuss each below.

### I. MOTHER'S APPEAL

Mother's two points on appeal challenge the following findings of the trial court as being against the weight of the evidence: (1) there was not a substantial and continuing change in circumstances of the custodian or children; and (2) modification of custody would not serve the children's best interest. Because Mother's points are interrelated, we will discuss them jointly.

 We will affirm the trial court's judgment in a custody modification case unless no substantial evidence supports it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *In re D.M.S.*, 96 S.W.3d 167, 171 (Mo.App. S.D.2003). In making our determination, we view the evidence in the light most favorable to the trial court's judgment, deferring to the trial court's assessment of credibility. *Searcy v. Seedorff*, 8 S.W.3d 113, 116 (Mo. banc 1999). We give greater deference to the trial court's determination in child custody matters than in other cases. *In re D.M.S.*, 96 S.W.3d at 171. Where there is conflicting evidence, the trial court, in its discretion, may accept or reject all, part, or none of the testimony it hears. *Id.* "We exercise extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and will do so only upon a firm belief that the judgment was wrong." *Id.*

 Section 452.410.1,[2] which governs child custody modification, provides, in relevant part, that:

> the court shall not modify a prior custody decree unless … it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

"There is a presumption that the party awarded custody in the original degree is a suitable custodial parent[.]" *In re D.M.S.*, 96 S.W.3d at 171. Therefore, "[t]he burden is on the moving party to prove a substantial change has occurred and that a modification of custody is in the best interests of the minor children." *Walker v. Walker*, 184 S.W.3d 629, 632 (Mo.App. S.D. 2006). Before a custody decree can be modified, there must be a significant or substantial change in circumstances. *Id.* If the trial court does not find a substantial change of circumstances, it never reaches the best interests issue. *Id.*

In denying Mother's motion to modify custody, the trial court made the following relevant findings of fact and conclusions of law:

> 4. On Wednesday, January 14, 2004, and as punishment for some [sic] not going to bed or staying in bed, [Father] struck [S.S.] several times on her posterior side. He caused the bruising seen by Dr. Turner. That amounts to physical abuse of [S.S.]
>
> . . . .
>
> 7. To warrant a custody modification, the circumstances of [Father] or child must have changed, and the changes must be substantial and con-

---

**2.** All references to statutes are to RSMo (2000), and all references to rules are to Missouri Rules of Civil Procedure (2005), unless otherwise indicated.

tinuing. Intentional physical abuse by excessive punishment is a substantial change in the circumstances of [S.S.] and [Father]. However, as reprehensive as [Father's] conduct toward [S.S.] on January 14, 2004 is concerned, it is not a pattern, has not occurred again, and is not continuing.

. . . .

9. It would be in the best interests of [S.S.] and [D.S.] to remain in [Father's] primary physical custody under the original visitation and parenting plan.

10. Because of domestic violence in [Mother's] household, it would not be in the best interests of the children to remain in her primary custody.

The Supreme Court of Missouri held in *Searcy*, 8 S.W.3d at 117, that under the "plain language of [Section] 452.410.1, . . . a moving party . . . who seeks to modify a custody order must first establish that a substantial 'change of circumstances of the child or his custodian' has occurred." (quoting Section 452.410.1). Because we are constitutionally bound to follow the latest Supreme Court of Missouri decision, "we are required to follow the line of cases applying the 'substantial' component to the requirement of a change of circumstances in a modification of custody case." *In re Marriage of Eikermann*, 48 S.W.3d 605, 609 (Mo.App. S.D.2001).

Here, the trial court found that there was a substantial change in circumstances, but that it was not continuing. "[A] finding of a 'substantial and continuing change' in circumstances is not a prerequisite to the modification of custody decrees. The 'substantial and continuing change' language is part of [Section] 452.370, which concerns a modification of support." *In re C.N.H.*, 998 S.W.2d 553, 556–57 (Mo.App. S.D.1999). That statute does not control a modification of custody. *Id.* at 557. To modify child custody under Section

452.410, "a change in circumstances of the child or custodian warranting custody modification must be 'substantial' or 'significant,' but it need not necessarily be continuing." *In re McIntire*, 33 S.W.3d 565, 569 (Mo.App. W.D.2000).

■ While the trial court need not find that the change in circumstances is continuing, "it does not follow that the trial court incorrectly applied the wrong standard simply because it found that the change in circumstances [was] continuing." *Smith v. Smith*, 75 S.W.3d 815, 819 (Mo. App. W.D.2002). However, in the present case, the trial court found that the change in circumstances was substantial, but *not* continuing. Therefore, in denying Mother's motion to modify custody, the trial court found the absence of an element that it was not required to find. To the extent that the trial court has required a change in circumstances be continuing, it has misapplied the law.

■ However, this fact alone does not require reversal of the trial court's judgment. As previously related, to modify custody, the trial court must find *both* of the following: (1) there has been substantial change in circumstances and (2) modification of custody is in the best interests of the children. *Walker*, 184 S.W.3d at 632. Here, while the trial court found that there had been a substantial change in circumstances, it did not find that modification of custody was in the children's best interests. Therefore, we may affirm the judgment of the trial court if its finding that modification is not in the children's best interests is supported by the evidence.

Mother argues that the trial court's best interests determination is against the weight of the evidence, because there was evidence that the children were subjected to physical abuse and inappropriate sexual

contact while in Father's care, and there was no credible evidence presented that domestic violence existed in Mother's household. We disagree.

■ "In deciding the best interests of a child in a custody modification proceeding, the trial court must consider all relevant factors[.]" *In re D.M.S.*, 96 S.W.3d at 174–75. The trial court is presumed to have reviewed all evidence and based its decision on the best interests of the child. *Id.* at 175. We presume the trial court properly considered the statutory factors when it made its decision. *Id.*

Viewing the evidence in the light most favorable to the judgment, we find ample evidence to support the finding that the children's best interests are better served by remaining in the custody of Father. The trial court found that Father had spanked S.S. several times on January 14, 2004, as punishment for not going to bed, causing the bruising that was discovered by Mother. However, the trial court also had evidence before it that Mother had spanked both children with a belt. D.S. told Nina Snodgrass, at the Children's Advocacy Center, that Father had spanked him once, but Mother spanked him all the time. The children told Catherine Creason ("Creason") with the Division of Family Services ("DFS") that Father only used his hands when he spanked them, while Mother used a belt. DFS substantiated reports of abuse against both parents.

Since this case was initiated, Father has been cooperative with DFS, and has been going to counseling with the children. Father has entered into a safety plan with DFS, which provides, in part, that he is not to physically discipline the children. To Creason's knowledge, Father has complied with this plan. Creason testified that the children have never expressed any fear towards Father. Deborah Middleton, who conducted the counseling sessions with Fa-

ther and the children, believed that Father provided a positive environment for the children.

Also before the trial court, was evidence that S.S. and the children of Father's girlfriend, Jill Riddle ("Riddle"), had engaged in inappropriate touching. Father testified that on the one occasion he suspected that something inappropriate was occurring, he separated S.S. and M.R., Riddle's three-year-old son.

As to Mother's household, the trial court was presented with evidence that Mother and her husband, James Kinner ("Kinner"), got into an argument in the presence of the children, which culminated in Kinner turning over a dresser in the couple's bedroom. Kinner also broke a DVD player and a picture on the wall during the argument. Additionally, S.S. had told Father, that she had witnessed Mother and Kinner engaging in oral sex.

In arguing her point, Mother sets out evidence that sheds a favorable light upon her case, while ignoring evidence which adversely affects her position. In doing so, Mother ignores our standard of review which requires us to view the evidence in the light most favorable to the trial court's judgment. *Searcy*, 8 S.W.3d at 116. We also reiterate that the trial court, when presented with conflicting evidence, may accept or reject all, part, or none of the testimony it hears. *In re D.M.S.*, 96 S.W.3d at 171. As previously related, "[w]e exercise extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and will do so only upon a firm belief that the judgment was wrong." *Id.* Here, we do not have a firm belief that the judgment was wrong. Mother's points are denied.

■ While the issue was not raised by Mother, we note that the trial court's judg-

ment does not make any statutory findings as required by Section 452.375.6. Where, as here, the parties do not agree on a custodial arrangement, Section 452.375.6 requires that the trial court:

> include a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child. If a proposed custodial arrangement is rejected by the court, the court shall include a written finding in the judgment or order detailing the specific relevant factors resulting in the rejection of such arrangement.

Because the parties did not agree on a custodial arrangement for the children, the trial court was required to make written findings pursuant to subsections four and two of Section 452.375. In *Speer v. Colon*, 155 S.W.3d 60, 61–62 (Mo. banc 2005), the Supreme Court of Missouri reversed the trial court's judgment where it failed to make the findings mandated by Section 452.375.6. However, the current version of Rule 78.07(c), which became effective on January 1, 2005, provides that, "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review."

■■■ Rule 78.07(c) applies here because the trial court's judgment was entered after January 1, 2005. Therefore, to preserve for review the trial court's failure to make the statutory findings, Mother was required to file a motion to amend the judgment. *In re Holland,* 203 S.W.3d 295, 301 (Mo.App. S.D.2006). Here, there is no indication in the record that Mother filed a motion to amend the judgment. "Absent

such a motion, the trial court's failure to make findings under [S]ection 452.375.6 is unpreserved error in a custody modification case." *Id.* at 302.

The trial court's decision to deny modification of custody is affirmed.

## II. FATHER'S CROSS–APPEAL

■■■ In Father's sole point, he argues that the trial court abused its discretion in awarding attorney's fees for Mother and against Father. Specifically, he argues that the award was improper, because there was no evidence before the trial court regarding the parties' financial resources. We agree.

■■■ "As a general rule, parties to a domestic relations case are responsible for paying their own attorney's fees." *Alberswerth v. Alberswerth,* 184 S.W.3d 81, 93 (Mo.App. W.D.2006). A trial court may, however, award attorney's fees under Section 452.355.1. That section provides that:

> the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

■■■ The trial court has discretion to award attorney's fees only after it has considered all relevant factors, including the financial resources of both parties, the merits of the case, and the actions of a party. *Hatchette v. Hatchette,* 57 S.W.3d 884, 893 (Mo.App. W.D.2001). The trial court abuses its discretion where its deci-

sion is against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

A trial court must always consider the financial resources of both parties before awarding attorney's fees. *Alberswerth,* 184 S.W.3d at 94. An award of attorney's fees cannot stand in the absence of evidence as to the parties' financial resources. *Id.*

Here, the only evidence before the trial court was a Form 14, which set out the parties' monthly gross income. There is no indication in the record that the trial court was presented with any evidence regarding the living expenses or debts of either party. "Although present earnings are among the relevant factors to be considered in awarding attorney fees, a court must know what debts each party owes ... before it can determine either need or ability to pay." *Barancik v. Meade,* 106 S.W.3d 582, 594 (Mo.App. W.D.2003). Without evidence regarding the parties' expenses and debts, the trial court did not properly consider the financial resources of the parties, and therefore it abused its discretion in awarding attorney's fees. Father's point is sustained.

We reverse that part of the trial court's judgment awarding attorney's fees to Mother. *In re Marriage of Trimble,* 978 S.W.2d 55, 59 (Mo.App. S.D.1998). In all other respects, the judgment is affirmed.

BATES, C.J., and LYNCH, J., concur.