**In re the Marriage of Denise A. BASHAM, f/n/a Denise A. Williams, Petitioner–Appellant,**

v.

**Mark Allen WILLIAMS, Respondent–Respondent.**

Nos. 28211, 28436.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 7, 2007.

---

**720**

Joseph R. Aubuchon, Union, MO, for Appellant.

Edward D. Hoertel, Rolla, MO, for Respondent. (*no brief filed by Respondent).

NANCY STEFFEN RAHMEYER, Judge.

■ This appeal arises from a judgment modifying child custody and child support and the denial of a request for contempt proceeding. Two children, Ryan, date of birth June 18, 1990, and Jeremy, date of birth December 18, 1992, were born of the marriage of Denise A. Basham ("Mother") and Mark Allen Williams ("Father"), which was dissolved by a judgment in 1995 that was modified in 2003. Although neither the judgment of dissolution nor the subsequent modification order were contained in the legal file and the specific terms are not available to this Court, the Motion to Modify Judgment and Decree of Dissolution of Marriage, filed by Father, and Mother's Answer and Cross–Motion for Contempt, claim that Father was granted primary[1]

---

1. The term "primary" physical custody is used by both parties. We note that, "[t]he reference to 'primary' physical custody is inappropriate. Section 452.375 permits either sole or joint custody; a parent may no longer be granted 'primary' legal or physical custody." *In re Marriage of Hendrix,* 183 S.W.3d 582, 585 n. 2 (Mo. banc 2006).

physical custody of Ryan in the 2003 modification. We are also unclear as to the award of legal custody of either child and the award of physical custody of Jeremy.[2]

In 2005, Father filed a Motion to Modify, seeking the primary physical custody of the younger child, Jeremy; Mother filed a cross-motion for contempt alleging that Mother had been repeatedly denied visitation of Ryan. The trial court entered a judgment and decree of modification and an amended judgment and decree of modification. Mother appeals the trial court's decision modifying the prior orders and the denial of her cross-motion for contempt.[3]

■ Initially, we must discuss the procedural posture of this case as it is somewhat tortured. On August 10, 2006, the court entered a Judgment and Decree of Modification ("First Judgment"). On August 30, 2006, Mother filed a Motion for New Trial. A docket entry on November 27, 2006, stated: "Cause taken up. [Mother's counsel, the guardian ad litem and Father's counsel] appear. Argument heard. Cause taken under advisement for amended judgment. Judge Parker took case file with him. Judgment to be entered." On December 18, 2006, a docket entry reflects that the Motion for New trial was "taken up and considered. Motion overruled and denied," yet an Amended Judgment and Decree of Modification ("Amended Judgment"), which was signed,

dated, and certified, was filed on that same date. On March 19, 2007, the court entered a Nunc Pro Tunc Order, which stated the Motion for New Trial was actually sustained, and ordered "the judgment on August 10, 2006 be set aside." An appeal was filed on December 28, 2006, after the Amended Judgment, and another was filed on April 25, 2007.[4]

■ Because we granted a motion to file an appeal out of time, we must first discern which judgment is to be reviewed. According to the record on appeal, the First Judgment was "set aside" by the trial court's March 19, 2007 Nunc Pro Tunc Order. The same order sustained Mother's motion for new trial and affirmed that the Amended Judgment was properly entered on December 18, 2006. The problem, however, is that a nunc pro tunc order cannot be used to correct a judicial mistake or to render a judgment different from the original judgment. *State v. Bulloch*, 838 S.W.2d 510, 513 (Mo.App. W.D. 1992). The purpose of a nunc pro tunc order is to make the record conform to what the court actually did. *Id.* at 514. As a general rule, "[n]unc pro tunc proceedings may be used only to correct clerical mistakes in recording the judgment rendered." *Roedel v. Roedel*, 788 S.W.2d 788, 790 (Mo.App. E.D.1990). The nunc pro tunc order may not be used to change what was done. *Bulloch*, 838 S.W.2d at 514. This Court finds that the March 19,

2. We accept Mother's contention that this was indeed a modification of the prior order of modification, even though the prior order was not provided to this Court. It is Appellant's duty to supply all of the record, proceedings and evidence necessary to the determination of all questions presented, by either Appellant or Respondent. Rule 81.12(c). All rule references are to Missouri Court Rules (2007), unless otherwise specified.

3. Father has not filed a brief on appeal. There is no penalty for a respondent failing to

file a brief, however, this Court is forced to adjudicate Mother's claim of error without the benefit of whatever argument Father might have raised. *Dameron v. Drury Inns, Inc.*, 190 S.W.3d 508, 511 n. 2 (Mo.App. E.D. 2006).

4. Mother appealed the Amended Judgment in Case No. 28211; she subsequently requested permission to appeal the Amended Judgment out of time, which was granted and is Appeal Case No. 28436. The appeals were consolidated on May 10, 2007.

2007 Nunc Pro Tunc Order was improperly entered, as it did not reflect what the court actually did on November 2006 and did not correct a clerical error. The November 27, 2006 docket entry "[c]ause taken under advisement for amended judgment" does not indicate that the court set aside the First Judgment or granted the motion for new trial. The December 18, 2006 docket entry, which states that the motion for new trial was overruled, confirms this indication. The nunc pro tunc order, therefore, is a nullity.

■ What, then, is the effect of the November 2006 docket entry on the original judgment or modification? After the judgment was filed on August 10, 2006, Mother filed a valid after-trial motion when she filed the Motion for New Trial on August 30, 2006. The filing of a valid after-trial motion extended the court's jurisdiction of a final judgment to ninety days or when the motion was ruled on. Rule 81.05. The docket entry of November 27 did not extend the time for the court to rule on the after-trial motion, nor was it a denial of the after-trial motion. The court still had ninety days from the filing of the motion to rule on it; thus, the time for ruling on the motion for new trial was November 28, 2006. The motion for new trial was deemed overruled on that date. As such, the Amended Judgment, which was entered on December 18, 2006, was entered outside the ninety days and the trial court had no jurisdiction to amend the judgment; the Amended Judgment is a nullity. Thus, the First Judgment en-

tered by the trial court on August 10, 2006, is the only valid final judgment that is subject to our review.[5]

The First Judgment ordered "physical custody and placement of the parties' child, Jeremy Williams, born December 18, 1992, shall be placed with [Father]." The parenting plan, incorporated into the judgment and labeled Exhibit "A," added that Father's custody would be subject to visitation as set forth in the visitation schedule.[6] The First Judgment provided that Mother was to pay Father $322 per month in child support and granted Father the right to declare the children as dependents on his federal and state income tax returns. The court further ordered Mother and Father to pay $2,225 in fees for the guardian ad litem ("GAL"). The provisions for custody, child support, declaration of the children as dependents on federal and state tax returns, and the payment of GAL fees are the subjects of Mother's first four points on review.

### Custodial Arrangement

■ In Mother's first point, she argues that the trial court erred because it did not detail the specific factors under section 452.375.2 that the court applied to determine the custodial arrangement. Mother also challenges the sufficiency of the evidence regarding the decision to award sole physical custody of Jeremy to Father. Specifically, Mother argues that Father failed to demonstrate a continuing and substantial change of circumstances as was required to modify the decree.[7]

---

5. This Court notes that there was no timely appeal taken from this First Judgment; however, since this Court granted the motion to file an appeal out-of-time, we review the only judgment that is final in this case.

6. This Court understands the trial court's reference to "physical custody ... subject to visitation" to be the equivalent of the statutorily identified "sole custody" since it is clear

that physical custody, pursuant to section 452.375, permits only sole or joint custody. All references to statutes are to RSMo 2000, unless otherwise specified.

7. Mother's first point on appeal contains two entirely separate claims of trial court error, which violates Rule 84.04(d). Generally, presenting multifarious claims of error into a single point where the incidents do not relate

This Court finds that the recitation of relevant factors in the court's findings, although not definitive as contemplated by the legislature, were sufficient to permit meaningful appellate review. Section 452.375.6 states that "[i]f the parties have not agreed to a custodial arrangement . . . the court shall include a written finding in the judgment or order based on the public policy" set forth in that statute. Mother argues that the trial court's findings were insufficient in that they merely gave a recitation that the court has considered the relevant statutory factors and that alone is insufficient to comply with section 452.375.6. She claims the court did not discuss with particularity each of the eight factors mentioned in section 452.375.2(1)-(8), the court did not detail the relevancy of the factors to the case, and the court did not discuss why the factors warrant this particular custodial arrangement.

■■■ While Mother is correct that a mere recitation of the statutory factors is not sufficient, the court set forth specific reasons for the change of custody. The court included findings concerning the deteriorating relationship between Mother, Jeremy and Mother's live-in fiancé. The court further noted the developing relationship between Jeremy and his brother, who lived with Father, and Jeremy's wishes. Section 452.375.6 does not require the circuit court to make written findings of fact on all of the factors listed in section 452.375.2, but instead, the circuit court must detail what it deems to be the relevant factors. *Tipton v. Joseph–Tipton,* 173 S.W.3d 692, 694 (Mo.App. W.D.2005) (*citing Speer v. Colon,* 155 S.W.3d 60, 61 (Mo. banc 2005)). We find that the trial court made adequate findings and considerations to comply with section 452.375.6.

■■■ Mother's next sub-point challenges the sufficiency of the evidence to support a finding of changed circumstances. Mother asserts that Father failed to meet his burden of proof that a substantial change of circumstances had occurred since the last modification in 2003. In reviewing a court-tried case, an appellate court must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or erroneously declares or applies the law. *Foster v. Village of Brownington,* 140 S.W.3d 603, 607 (Mo.App. W.D.2004). We view the evidence in the light most favorable to the decision, deferring to the trial court's assessment of credibility. *Kinner v. Scott,* 216 S.W.3d 715, 718 (Mo.App. S.D.2007). Greater deference is given to a trial court's determination regarding child custody matters than in other cases. *Id.* We shall exercise extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence and would do so only upon a firm belief that the judgment was wrong. *Id.*

As noted in the challenge to the court's recitation of findings, the court detailed the deteriorating relationship between Mother and Jeremy. We further note the court's determination that Father "has failed to do all he can to ensure Ryan Williams attends visitation with [Mother]" and we believe that failure to comply with a prior court order alone could have provided substantial evidence to find against awarding Father custody of Jeremy in the modification action, however, that is but one factor. While there was evidence that Jeremy's grades had dramatically declined

to the same issue preserves nothing for review. *In re D.L.W.,* 133 S.W.3d 582, 584 (Mo.App. S.D.2004). Because of the serious nature of a child custody determination, however, we shall gratuitously address each of Mother's arguments.

at his Mother's home and evidence of the positive relationship between Jeremy and his older brother, who resided with his Father, there was certainly negative evidence concerning Father's home and the deteriorating school situation with Ryan at his Father's home.[8] Although sufficient evidence would have supported a determination that there was not an adequate change of circumstances in Mother's home and that Father's behavior certainly contributed to the negative relationship between Mother and Jeremy, given the extra deference to trial courts regarding child custody matters, we find that the evidence is sufficient to support the court's determination that a substantial change in circumstances had occurred since the last modification.[9] Point I is denied.

### Child Support Award

For her second point on appeal, Mother challenges the trial court's award of child support to Father wherein Mother was ordered to pay $322 a month to Father, alleging that the trial court's findings are not based on substantial evidence. We disagree. "When a court determines child support in any proceeding, Rule 88.01 and section 452.340 require it to follow a two-step procedure." *Davis v. Schmidt*, 210 S.W.3d 494, 506 (Mo.App. W.D.2007). First, via a Form 14 calculation, the court must determine and find for the record a presumed correct amount of child support. *Klingseisen v. Klingseisen*, 216 S.W.3d 706, 708 (Mo.App. E.D.2007). In finding the presumed child support amount, the trial court can either accept one of the parties' Form 14 calculations or reject them and make its own calculation.

*Roush*, 195 S.W.3d at 17. In the second step, the trial court is required to determine whether or not to reject the presumed amount as unjust or inappropriate after a consideration of all relevant factors. *Id.; Klingseisen*, 216 S.W.3d at 708.

Each party is required by Rule 88.01 to submit a Form 14 worksheet to assist the trial court in determining the correct calculations. *Woolridge v. Woolridge*, 915 S.W.2d 372, 380 (Mo.App. W.D. 1996). "[I]n the case of a party failing to submit a Form 14, that party is denied appellate review of alleged error concerning the determination of child support." *Id.* (*citing Luker v. Luker*, 861 S.W.2d 195, 199 (Mo.App. W.D.1993); *Hackmann v. Hackmann*, 847 S.W.2d 193, 194 (Mo.App. E.D.1993)). Neither parent offered a Form 14 into evidence. The only record we have is a Form 14, which states it was prepared by Father's attorney, but was submitted to the court on August 10, 2006, fifteen days after the trial was over. This Form 14 was apparently adopted by the court and is included in the record on appeal.

Mother now complains that she was not given an opportunity to rebut the child support calculations. "To permit a party who did not file a Form 14 with the trial court to appeal child support decisions is akin to pursuing a different theory of recovery on appeal than was pursued at trial." *B.S.E. v. Grant*, 971 S.W.2d 883, 885 (Mo.App. E.D.1998); *State, ex rel. Cote v. Kelly*, 978 S.W.2d 812, 815 n. 2 (Mo.App. S.D.1998). Mother's failure to file a Form 14 precludes appellate review of her allegation that the child support award found

---

8. What was abundantly clear in this record was that Father and Mother have been unable, in the twelve years since their divorce, to put aside their differences and behave in a civil manner toward each other for the sake of their two sons. Neither child will benefit from any trial court ruling when they are subjected to such behavior from their parents.

9. Again, we assume that this is indeed a modification of legal and physical custody.

by the trial court was not supported by the evidence introduced at trial. We have gratuitously reviewed the calculations and find them supported by Mother's testimony as to her income and Father's testimony as to his insurance expenses. Point II is denied.

### Tax Exemption

In her third point on appeal, Mother asserts that the trial court erred in awarding the tax year 2006 income tax dependency exemption for Jeremy to Father. She asserts that the child lived with her for eight and a half months of the 2006 year, and because he lived with her for the majority of 2006, she should have been awarded the exemption for tax year 2006.

■■■ "Missouri has long recognized the trial court's jurisdiction to allocate tax exemptions between parents." *Vohsen v. Vohsen*, 801 S.W.2d 789, 790 (Mo.App. E.D.1991). In the absence of an agreement between the parties, it is appropriate for the trial court to determine and express which party is entitled to the available exemptions. *Id.* at 791. The power, however, must be exercised in accordance with the provisions of the Internal Revenue Code. *Id.* "Generally, under 26 U.S.C. Section 152(e), unless there is a contrary court order, the primary custodial parent is entitled to the tax exemption for a dependent child." *Gould v. Dickens*, 143 S.W.3d 639, 645 (Mo.App. E.D.2004). 26 U.S.C. Section 152(e) provides that the "custodial parent" shall receive the exemption unless either a qualified pre–1985 instrument between the parents is applicable to the taxable year, or the "custodial parent" signs a written declaration that he or she will not claim the child as a dependent for that year. The "custodial parent" is defined as "the parent having custody for the greater portion of the calendar year," and the "noncustodial parent" is simply the parent who is not the "custodial parent." 26 U.S.C. Section 152(e)(4).

■■■ Here, Mother had majority physical custody of Jeremy until August 10, 2006. As such, Mother falls within the definition of "custodial parent" in 26 U.S.C. Section 152(e) for the year 2006. No qualified pre–1985 instrument between the parties exists. Therefore, in order for Father to be able to claim the tax exemption, Mother must sign a written declaration indicating she will not claim Jeremy. While the trial court lacks the authority to merely order that a noncustodial parent receive a child as a dependent for income tax purposes, 26 U.S.C. Section 152(e); *Mehra v. Mehra*, 819 S.W.2d 351, 357 (Mo. banc 1991), in order to effectuate such an allocation, the trial court must order the custodial parent to execute the required declaration in favor of a noncustodial parent. *Vohsen*, 801 S.W.2d at 791–92; *accord Mehra*, 819 S.W.2d at 357. The trial court, in the case at bar, appropriately ordered Mother to execute such a release. The only argument Mother offers for her claim that the trial court erred in not awarding her the tax exemption, is that she had physical custody for the majority of the year. It is our view that Mother has failed to demonstrate how the trial court abused its discretion in making this order. Accordingly, Mother's third point is denied.

### Guardian Ad Litem Fees

■■■ In her next point, Mother asserts that the trial court erred in awarding GAL fees in the amount of $2,225 because the court did not consider the financial resources of the parties and that the statement of fees was received into evidence without allowing the parties to rebut the statement of fees and expenses.

Initially, Mother denies she had an opportunity to review and/or challenge the GAL award. Relying on *In re Morrison*, 987 S.W.2d 475 (Mo.App. S.D. 1999), she asserts that the GAL's fee statement was never offered into evidence as it was filed the day following trial. As this Court stated in *Morrison*:

> [i]t is incumbent on a guardian ad litem to show the extent of necessary services and attorney's fees rendered in regard to matters for which the Appellants, or either of them, could properly be responsible. Such evidence is necessary so that the trial court's award may be based on evidence, and so that an appellate court may have a record to review in determining the propriety of the trial court's discretionary action.

987 S.W.2d at 480 (internal citations omitted). In *Morrison*, the GAL did not file his bill for services with the court until after the time that the evidence was presented on the issues. *Id.* The *Morrison* court held that "the mere filing of a document does not put it into evidence," and that, therefore, the judgment awarding GAL fees had to be reversed because no evidence existed to support it. *Id.* The facts in *Morrison* are quite similar to the case at hand.

On the final day of trial, the trial court made a docket entry stating that the cause had been taken under advisement and that the GAL was to file a statement with the court before August 10, 2006. Apparently, the GAL filed his statement the next day; however, as previously mentioned, simply filing the document did not cause the document to be placed into evidence and neither Mother, Father, nor their respective counsel was given any opportunity to review, question or refute the bill of the GAL. We note that there was no service to the attorney listed on the "statement." As in *Morrison*, we find lack of a notice, a

hearing, and any evidence on this issue requires us to reverse the award of GAL's fees. *Id.* at 480. The judgment for GAL's fees in the amount of $2,225 is reversed and remanded to the trial court for an evidentiary hearing to determine the amount of fees that the GAL is appropriately entitled to, the identity of the persons who should be responsible for such fees, and the manner in which those fees should be apportioned among those responsible.

### Mother's Counter–Motion for Contempt

Mother argues that the trial court erred in not finding Father to be in contempt for failing to follow the custodial schedule as established in the 2003 Judgment. In our review of civil contempt proceedings, the trial court's judgment will not be disturbed on appeal absent a clear abuse of discretion. *Walters v. Walters*, 181 S.W.3d 135, 138 (Mo.App. W.D.2005). We view the evidence in the light most favorable to the judgment and disregard contrary evidence. *Burns v. Burns*, 164 S.W.3d 99, 102 (Mo.App. E.D.2005). This Court defers to the trial court's judgment on questions of credibility of witnesses. *Garner v. Hubbs*, 17 S.W.3d 922, 929 (Mo. App. S.D.2000).

A prima facie case for contempt is established when a party demonstrates: (1) the contemnor's obligation to perform an obligation as required by a decree; and (2) the failure of the contemnor to meet that obligation. *Id.* Once a prima facie case has been established, the alleged contemnor must then prove that their failure to meet the required obligation was not due to their own intentional and contumacious conduct. *Id.; Love v. Love*, 75 S.W.3d 747, 759–60 (Mo.App. W.D.2002).

The parties admit the 2003 modification established regular visitation periods be-

tween Mother and Ryan. Father admits that, in the sixteen months prior to the proceeding below, Ryan had not seen Mother for all but a period of three months. Mother, therefore, established an obligation and that Father had failed to meet that obligation. The burden then shifted to Father to show that his failure to meet the obligation was not due to his own intentional and contumacious conduct. Father testified that he always encouraged Ryan to visit Mother on the scheduled dates, but that Ryan did not want to go. Father also testified that Ryan should not be the person who makes the decision as to whether or not he visits Mother.

Whether or not Father's conduct was intentional and contumacious is a fact-driven inquiry. It is clear that the trial court did not believe that Father had acted in a contumacious manner in failing to meet his obligations under the 2003 Judgment. "Although many trial courts would have found [Father] guilty of contempt, we cannot say the trial court erred as a matter of law and that it did not have discretion to deny the motion." *Gerau v. Gerau*, 927 S.W.2d 441, 443 (Mo.App. E.D.1996). Viewed in the light most favorable to the judgment, we cannot state that the trial court erred as a matter of law in denying Mother's counter-motion for contempt. It is clear the court was presented with a Herculean task of resolving a nearly irresolvable issue. While not unsympathetic with Mother's claim, we note Mother has other remedies. *See, e.g.*, section 452.400 (Family Access Act provides additional remedies for the denial of visitation).

The judgment is affirmed in all respects, except as to the payment of GAL fees. The case is remanded to the trial court in order to provide an opportunity to be heard on that issue.

BARNEY, P.J., and CRAWFORD, SR. J., concur.