IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2013

## STATE OF TENNESSEE v. YOGONDA ABDULA CORLEY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2010-C-2743      Cheryl Blackburn, Judge**

_____

**No. M2013-00464-CCA-R3-CD - Filed February 26, 2014**

_____

Defendant, Yogonda Corley, was charged with five counts of aggravated sexual battery, with three counts being against the victim T.S. and two counts against the victim M.M., and seven counts of rape of a child, with three counts being against T.S. and four counts being against M.M.  Following a jury trial, Defendant was convicted of six counts of rape of a child, four counts of aggravated sexual battery, and one count of attempted aggravated sexual battery. Following a sentencing hearing, Defendant was ordered to serve a total effective sentence of 75 years incarceration.  In this appeal as of right, Defendant asserts that it was plain error for the trial court: 1) to admit into evidence a recording and transcript of statements by Defendant obtained by the use of a body wire worn by the mother of one of the victims; 2) to admit into evidence Defendant's  statements to the police following his arrest; 3) to admit into evidence the opinion testimony by a nurse practitioner that the victims' statements were consistent with their medical examinations; and 4) not to sever the offenses against the two victims. Defendant asserts that the cumulative effect of these errors entitles him to a reversal of his convictions.  Lastly, Defendant categorizes another section of his brief as a challenge to the sufficiency of the evidence, but then acknowledges that he chooses not to argue the sufficiency of the evidence to support his convictions.  With regard to the evidentiary issues, we conclude that the Defendant has waived consideration of the issues by his failure to contemporaneously object at trial.  Also, Defendant failed to request severance of the charges as to each victim pre-trial.  Because the alleged evidentiary issues and severance issue do not rise to the level of plain error, we decline review.  We further conclude that the evidence is sufficient to support Defendant's convictions.  Accordingly, the judgments of conviction are affirmed.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined.  CAMILLE R. MCMULLEN, filed a separate concurring opinion.

James O. Martin, III, Nashville, Tennessee, for the appellant, Yogonda Abdula Corley.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; Sharon Reddick, Assistant District Attorney General; and Kristen Menke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts*

In the light most favorable to the State, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) and Tenn. R. App. P. 13(e), the evidence at trial showed the following. The two victims in this case, whom we will refer to by their initials T.S. and M.M., are cousins. Both victims were 12 years old at the time of trial. When T.S. was ten years old, she disclosed several acts of sexual abuse by Defendant that happened when T.S. was visiting M.M. On one occasion, T.S. and M.M. fell asleep while watching television. T.S. testified that Defendant woke her up and took her into the living room. T.S. was lying on her back on the floor, and Defendant reached under her pajamas and touched her breasts and the inside of her vagina with his fingers. T.S. began to cry and tried to get up "but he wouldn't let [her] get up and go back to bed." Defendant told T.S., "this is our little secret." On another occasion, Defendant woke up T.S. and took her into the living room and touched her breasts and vagina with his fingers and with his tongue and lips. T.S. was crying and trying to get up and Defendant "wouldn't let [her] go." After that incident, Defendant gave T.S. twenty dollars and "kept on reminding" her not to tell anyone.

T.S. testified that Defendant touched her on more than three occasions while her cousin M.M.'s family was living in the house where the first incident occurred ("the old house"). M.M.'s family moved to another house ("the new house"), where the abuse continued. T.S. testified about two incidents that occurred in that house. She testified that on one occasion, after a party at M.M.'s house, Defendant tried to penetrate her anus with his penis.

M.M. testified about four incidents that occurred when her family was living in the old house. She testified that the abuse started when she was nine years old. On one occasion, Defendant called her into her mother's bedroom and told her to lift her shirt. When she refused, Defendant pushed her onto the bed, lifted her shirt, and touched her breasts. She heard her brothers run back into the house, and Defendant stopped. On another occasion, M.M. was outside playing when Defendant told her to clean up her room. She went into her bedroom, and Defendant followed and pushed her onto the bed. He told her to lift up her

skirt, but she refused. Defendant then lifted M.M.'s skirt and took off her panties, and he put his penis "inside" her vagina. On another occasion, M.M. and her brothers were in her brothers' room playing when Defendant told them to go outside. He told M.M. to stay. He then took off her pants and touched her on the inside of her vagina with his hand. On another occasion, Defendant was standing in the doorway of his bedroom, wearing only a towel. He stopped M.M. in the hallway and told her to touch his penis. She started to run away, and Defendant told her she was grounded. Defendant grabbed M.M.'s hand and made her touch his penis.

M.M. testified that she was ten years old when they moved to "the new house." She testified about an incident that occurred three days after they moved into that house. She was lying in her bed when Defendant entered her bedroom, pulled down her pajamas, and penetrated her anus with his penis. She testified that it was painful. M.M. testified that Defendant "forced [her] down" by pinning down her arms and legs. M.M. testified that Defendant had threatened her not to tell anyone about the abuse by saying, "if you tell, you know what's happening." M.M. believed Defendant would give her "[a] butt whipping" because he had whipped her before for not letting him touch her. M.M. testified that she "got sick of" the abuse and told someone at school about it.

*Analysis*

We note that Defendant was represented by different counsel at trial and in this appeal. On appeal, Defendant urges this court to analyze four issues under the plain error doctrine. Defendant acknowledges that objections were not made at trial to the admission of the following evidence: 1) a body wire recording of a conversation between T.S.'s mother and Defendant; 2) Defendant's subsequent confession to police; and 3) testimony by nurse practitioner Sue Ross that M.M.'s lack of physical injury was not inconsistent with M.M.'s testimony. Also, no pre-trial motions to suppress Defendant's statements were filed. Defendant also acknowledges that no objection to joinder of the offenses related to both victims or pretrial motion for severance was filed, and Defendant seeks plain error review of the trial court's failure to sever the offenses against the two victims.

Tennessee Rule of Criminal Procedure 12(b)(2) provides that motions to suppress evidence and to sever offenses must be raised prior to trial. *See also State v. Coulter*, 67 S.W.3d 3, 37 (Tenn. Crim. App. 2001). "The rule is applicable when a claim of a constitutional right is involved whose violation would lead to suppression of evidence." *State v. Goss*, 995 S.W.2d 617, 628 (Tenn. Crim. App. 1998). Here, Defendant was obligated to file a motion to suppress evidence and to sever the offenses before trial. Failure to do so constitutes waiver of the issues. *See* Tenn. R. Crim. P. 12(f).

Pursuant to the rules of appellate procedure, the failure to object contemporaneously to the admission of evidence also constitutes waiver. Tenn. R. App. P. 36(a) (nothing in the rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error); *see also State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000) ("This court is extremely hesitant to put a trial court in error where its alleged shortcoming has not been the subject of a contemporaneous objection.").

Tennessee Rule of Appellate Procedure 36(b) provides that when appropriate, an appellate court "may" consider an error not properly raised in the lower court. However, the Advisory Commission Comments to Tennessee Rule of Appellate Procedure 13(b) suggest that the discretionary authority for the declaration of plain error "*be sparingly exercised*." Tenn. R. App. P. 13(b), Advisory Comm'n Comments (emphasis added). In conducting a plain error review, a court will reverse for plain error only if: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law has been breached; (3) a substantial right of the defendant has been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting this court's plain error test set forth in *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)); *see also* Tenn. R. App. P. 36(b).

The appellate court need not consider all five factors if it determines that any single factor indicates that relief is not warranted. *Id*. at 283. Furthermore, for this court to reverse the judgment of the trial court, the "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial," and "recognition should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *Adkisson*, 899 S.W.2d at 642. Moreover, it is the defendant, not the State, who bears the burden of demonstrating plain error. *State v. Gomez*, 239 S.W.3d 722, 727 (Tenn. 2007) (Gomez II).

Three of the four issues Defendant asserts are plain error are evidentiary issues. The record in this case reflects that Defendant did not file pre-trial motions to suppress or object to the evidence he argues should not have been admitted. The evidentiary issues were raised for the first time in Defendant's "Supplemental Motion for New Trial." The following testimony at trial is relevant to these issues.

T.S.'s mother testified that she reported the alleged abuse to the police and the Department of Children's Services. At the direction of Detective Eric Fitzgerald, T.S.'s mother agreed to wear a body wire during a conversation with Defendant. She went to Defendant's house and asked him to go outside to speak with her. She told Defendant that

the two victims had spoken to each other, even though that statement was untrue, in order to have "some footing" on Defendant. She spoke to Defendant for 45 minutes. Defendant initially denied having engaged in sexual contact with either victim. Defendant then admitted that he had abused T.S. Following this conversation, police immediately arrested Defendant. A recording and transcript of the conversation between T.S.'s mother and Defendant were admitted as evidence at trial.

Detective Fitzgerald testified that law enforcement commonly utilizes a "controlled phone call" or a "body wire" in order to obtain a confession from a suspect "because a lot of times the suspects will make admissions to family members if they don't think the police are involved." Detective Fitzgerald equipped T.S.'s mother with a body wire and listened from a surveillance van parked near Defendant's home. Regarding his preparation of T.S.'s mother for the body wire conversation with Defendant, Detective Fitzgerald testified,

> [E]very situation is different. When I go into it, the first thing we do is kind of break into the conversation and bring up the topic that we want to get to. I just always kind of tell them you just kind of wing it. Especially with mothers, I'll usually tell mothers, let your motherly instincts take over, you just think about your daughter and what happened and your goal is to try to get them to admit as to what occurred. And I just kind of leave it up to them. A lot of times what we'll do, if we have contact with them through text messaging or something, we'll text them in the middle of it if we hear something that's significant and need her to follow up with it or something. But they kind of just do it on their own. It usually works out.

Detective Figzterald testified that he spent approximately 20 to 25 minutes preparing T.S.'s mother for the body wire conversation. He testified that he did not give her specific instructions on what to say to Defendant. He testified, "[s]he actually did a pretty good job of taking it upon herself to take care of that." Detective Fitzgerald testified that he did not instruct T.S.'s mother to lie to Defendant by telling him that both victims had disclosed being abused. He testified, "No, that was all her. I mean, pretty much that entire body wire was all her." Detective Fitzgerald testified that he called T.S.'s mother during her conversation with Defendant to make suggestions about staying on a particular topic.

After T.S.'s conversation with Defendant concluded, officers immediately went to Defendant's home and arrested him. Detective Fitzgerald testified that Defendant's only statement at the time of his arrest was, "I f****d up." Defendant appeared to have "kind of a defeated attitude." Detective Fitzgerald testified that Defendant was not aware that he was being recorded during his conversation with T.S.'s mother. Defendant was transported to the Criminal Justice Center, where Detective Fitzgerald interviewed him. On cross-examination,

Detective Fitzgerald testified that during his interview with Defendant, Defendant repeatedly denied having penetrated the victims and admitted to briefly "grinding" and "fondling" the victims. A recording and a transcript of Detective Fitzgerald's interview with Defendant were admitted as evidence at trial.

Absent a contemporaneous objection, there is little in a record to facilitate appellate review. For this reason, this court has held that "rarely will plain error review extend to an evidentiary issue." *State v. Ricky E. Scoville*, No. M2006–01684–CCA–R3–CD, 2007 WL 2600540 (Tenn. Crim. App. at Nashville, Sept. 11, 2007).

Because Defendant failed to file a pretrial motion to suppress or object to the testimony and evidence at trial, and consequently there was no jury-out hearing or suppression hearing to develop proof and from which the trial court could make findings of fact, we conclude that the record is inadequate to conduct a plain error review of the evidentiary issues in this case.

Defendant relies upon this court's holding in *State v. Ackerman*, 397 S.W.3d 617 (Tenn. Crim. App. 2012), in his assertion that the body wire recording should have been suppressed because T.S.'s mother was acting as a state actor and she overbore Defendant's will to resist confessing the offenses. However, in *Ackerman*, this court had the benefit of a suppression hearing when it reversed the trial court's denial of the defendant's motion to suppress statements he made to the victim's mother during a recorded "controlled telephone call" made at the direction of an investigating officer. *Id*. at 649.

While the record before us contains testimony of T.S.'s mother and Detective Fitzgerald, as well as the content of the recorded conversation, we cannot conclude that the recording should have been suppressed without a more developed record. There are conflicts in the testimony of T.S.'s mother and Detective Fitzgerald that should be resolved by the trial court. For example, T.S.'s mother testified at trial that Detective Fitzgerald told her she could mislead Defendant, and Detective Fitzgerald testified that he did not instruct T.S.'s mother to lie to Defendant. The State suggests that it is not entirely clear from the record that Defendant did not waive his objection to the evidence for tactical reasons. The State argues that Defendant's trial counsel knew that the victims would testify that Defendant had sexually penetrated them, and in recorded conversation with T.S.'s mother, Defendant repeatedly denied having penetrated the victims and only admitted having touched the victims. Finally, we cannot conclude that consideration of the issue is necessary to do substantial justice or that any error in admitting the recording probably changed the outcome of the trial. Accordingly, we decline plain error review of the admission of the body wire recording.

Defendant next contends that it was plain error for the trial court to admit his statements to police because they were not voluntarily given as they were derived from his statements during the body wire conversation. Essentially, Defendant asserts that his subsequent statements to investigators were "tainted" by his initial statements to T.S.'s mother, which were obtained unlawfully through the use of a body wire.

The State asserts that Defendant's attempt to "bootstrap" the issue to the body wire issue means that plain error review is likewise not warranted on this issue. Again, we decline to review the admission of Defendant's statements to police under a plain error analysis because the record is inadequate. The testimony at trial concerning the circumstances of the interview was cursory. Since we are unable to conclude that it was plain error to admit the body wire recording, we therefore cannot conclude that Defendant's subsequent confession to police was error. We note that even if Defendant's statements to T.S.'s mother were obtained illegally, the record is insufficient to determine whether Defendant's subsequent confession to police was sufficiently attenuated from the "taint" of the initial confession as to justify admission of the second confession. *See generally State v. Northern*, 262 S.W.3d 741, 763-64 (Tenn. 2008).

Moreover, in his police interview, Defendant admitted only to having touched the victims, and he repeatedly denied penetrating the victims. Again, it is conceivable that Defendant's trial counsel waived objection to the interview for tactical reasons because he knew the victims would testify as to penetration. Moreover, Detective Fitzgerald testified that Defendant made the spontaneous comment upon his arrest, "I f****d up," which undermines the notion that admission of the body wire recording and Defendant's subsequent confession, even if error, probably changed the outcome of the trial.

Defendant also contends that it was plain error for the trial court to allow nurse practitioner Sue Ross to testify that the lack of physical injury to M.M. was not inconsistent with M.M.'s description of the sexual abuse. Defendant asserts that Ms. Ross's testimony served to support the credibility of M.M. and to confuse or mislead the jury.

Ms. Ross was qualified by the trial court to testify as an expert for the State. She testified that it is unlikely that semen would be recovered during an examination more than 72 hours after an act of sexual abuse. Ms. Ross reviewed a report prepared by another nurse practitioner who examined M.M. on June 3, 2010. The report stated that M.M. disclosed several acts of sexual abuse by Defendant. M.M. told the examiner that the last incident occurred on March 1, 2010. A culposcopic exam did not reveal any injury resulting from sexual contact. Ms. Ross testified that there was nothing inconsistent with M.M.'s examination and her disclosures. She testified that it is common for young victims of sexual abuse to confuse vaginal penetration with penetration of the outer vaginal lips, which she

referred to as genital penetration. She testified that no finding of injury is consistent with genital penetration, rather than vaginal penetration, and that even where vaginal penetration occurs, injuries can heal beyond detection over time. Ms. Ross also testified that M.M.'s disclosure of anal penetration was not inconsistent with no finding of injury because of the elastic nature of anal tissue and the tissue's ability to heal. She testified that it was "even more rare" to find significant anal injury associated with sexual penetration. She acknowledged that given the physical findings, she could not give an expert opinion as to whether "penetration did or did not happen." Ms. Ross also reviewed a medical report prepared by the physician who examined T.S. on May 25, 2010, and she testified that there was nothing in the report that was inconsistent with T.S.'s disclosures.

Based on the record before us, we cannot conclude that consideration of this issue is necessary to do substantial justice, that it was not a tactical decision by defense counsel not to object to the testimony, or that a substantial right of Defendant has been adversely affected. Accordingly, we decline plain error review of the issue.

Defendant also contends that it was plain error for the trial court not to sever the offenses against the two victims. Where the State seeks to consolidate separate indictments, the State need only show that the offenses are either (1) "parts of a common scheme or plan," *or* (2) that the offenses are "of the same or similar character." Tenn. R. Crim. P. 8(b). Consolidation in this case was clearly permissible under Rule 8(b). If a defendant objects to the consolidation of offenses that would otherwise be permissible under Rule 8(b), the offenses may not be tried together unless both of the following criteria are met: (1) "the offenses are parts of a common scheme or plan" and (2) "the evidence of one would be admissible in the trial of the others." Tenn. R. Crim. P. 14(b)(1).

On appeal, Defendant asserts that "had an objection been made, the offenses would have been required to be severed." The State characterizes Defendant's argument as an argument not that consolidation of the offenses was error, but that Defendant's trial counsel was ineffective for not objecting to consolidation or seeking severance of the offenses. We agree with the State.

Because defense counsel did not object, the record is entirely undeveloped on this issue. We cannot conclude that counsel's failure to object was not a tactical decision. The State points to examples of defense counsel's attempts to undermine the credibility of both victims and to establish that the victims, M.M. in particular, did not like Defendant and had a motive to fabricate the allegations. We also cannot conclude that failure to sever the offenses affected a substantial right or that consideration of the issue is "necessary to do substantial justice." *Adkisson*, 899 S.W.2d at 641-42. Therefore, Defendant is not entitled to plain error review on this issue.

Defendant contends that the cumulative effect of the alleged errors at trial entitle him to a new trial. Because we conclude that none of the Defendant's allegations merit plain error review, we further conclude that the Defendant's due process rights were not violated by any cumulative effect of the alleged errors.

Finally, Defendant contends that the evidence at trial, excluding the evidence he claims was inadmissible *and* assuming the offenses against both victims had been tried separately, is insufficient to support his convictions. Defendant then abandons his argument regarding the sufficiency of the convicting evidence and states in his brief, "[r]ather than argue against the sufficiency of the evidence as it currently exists, the Appellant would respectfully submit a new trial should be ordered based on these other errors." It is well-established that a reviewing court must consider erroneously admitted evidence in conducting a review of the sufficiency of the evidence. *State v. Longstreet*, 619 S.W.2d 97, (Tenn. 1981). However, Defendant has chosen to waive review of this issue.

Accordingly, we conclude that the judgments of the trial court should be affirmed.

_____
THOMAS T. WOODALL, JUDGE