# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 16, 2022

FILED

DEC 15 2022

Clerk of the Appellate Courts
Rec'd by _____

## STATE OF TENNESSEE v. TERRY LYNN NUCHOLS

### Appeal from the Circuit Court for Blount County
### Nos. C-26596, C-26597, C-26598, C-26599    Tammy M. Harrington, Judge

_____

### No. E2021-01415-CCA-R3-CD

_____

A Blount County jury convicted Defendant, Terry Lynn Nuchols, of four counts of identity theft and one count of forgery, as alleged in four separate indictments. By agreement, all indictments were consolidated for trial. The trial court sentenced Defendant as a Range III, persistent, offender to 12 years for each of the identity theft convictions and 15 years for the forgery conviction. All sentences were aligned consecutively for an effective 63-year sentence. Defendant appeals, arguing that: 1) the trial court erred by not suppressing hearsay testimony of probation officer Holly King; 2) Defendant's right to cross-examine witnesses pursuant to the Confrontation Clause was violated by the State's failure to call the victim as a witness at trial; 3) the evidence was insufficient to sustain Defendant's convictions; and 4) Defendant's sentence was excessive. Having reviewed the entire record and the briefs of the parties, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., P.J., and JOHN W. CAMPBELL, SR., J., joined.

Rick A. Owens, Maryville, Tennessee, for the appellant, Terry Lynn Nuchols.

Jonathan Skrmetti, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Ryan K. Desmond, District Attorney General; and Tracy Jenkins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Evidence at Trial*

Michael Stephens, the victim of all of the offenses in this case, could not be located at the time of trial. His sister, Skylee Herin, testified that he disappeared sometime around September 21, 2018. He was 19 years old at that time. Mrs. Herin became his legal guardian when he was 14 years old. Mrs. Herin explained that their mother was killed in a car accident when they were young, and Mr. Stephens received "a large lump sum of money" when he turned 18. Mr. Stephens quit high school and moved into his own apartment, but Mrs. Herin maintained a "[r]eally good" relationship with him. She explained that Mr. Stephens "blew through" his money quickly and could not pay his bills. Mrs. Herin had been helping Mr. Stephens manage his finances, but she closed a joint account when the balance dropped to $23. Mr. Stephens was eventually evicted from his apartment and "lived with . . . friends here and there."

Mrs. Herin became aware that Mr. Stephens had opened another account into which he had monthly payments directly deposited. Bank employees testified that Mr. Stephens, accompanied by Defendant, opened a student checking account at the Midland branch of Regions Bank in Maryville on September 11, 2018. He opened the account with a deposit of $100 that was debited from Defendant's checking account, and he used Defendant's address as the address on the new account. Photos taken from surveillance video showed Defendant driving a "little white four-door sedan." Later that day, Defendant went to the Walland branch of Regions Bank to deposit a $70 check written to him using one of the "starter" checks that Mr. Stephens received when he opened the new account. Mr. Stephens' name was misspelled as "Stevens" on the signature line. Mrs. Herin testified that she was familiar with Mr. Stephens' signature and that the signature on the check was not his. Mrs. Herin testified that she did not know Defendant and that she had never given Defendant permission to access Mr. Stephens' account.

When Mrs. Herin lost contact with her brother in September of 2018, she reported him missing to the Blount County Sheriff's Office ("BCSO"). BCSO Detective Douglas Folmar investigated Mr. Stephens' disappearance. In late September or early October, 2018, Detective Folmar met with Defendant at Defendant's house. According to Defendant, Mr. Stephens "unexpectedly left the residence" and Defendant had not seen him. Defendant provided an address in Georgia, which Defendant stated was Mr. Stephens' boyfriend's address. Law enforcement in Georgia conducted a welfare check at the address and did not locate Mr. Stephens.

In the following weeks, Detective Folmar searched the area around Defendant's residence and interviewed neighbors. He also periodically "stop[ped] in and ha[d] a casual conversation with [Defendant] to see if there had been any updates, see if he had heard anything, seen anything." Detective Folmar subpoenaed Mr. Stephens' bank records to determine if Mr. Stephens had made any transactions since he was reported missing, and

he discovered that Mr. Stephens had not accessed his account but that Defendant had accessed Mr. Stephens' account.

Bank statements entered as exhibits at trial showed that monthly deposits in the amount of $600 were made to Mr. Stephens' account by New York Life on or around the 18th of each month. On December 18, 2018, two separate deposits were made into Mr. Stephens' account by New York Life. In addition to the recurring $600 deposit, a $19,000 deposit was made.

At 11:00 p.m. on October 16, 2018, a $640 withdrawal was made from Mr. Stephens' account at an ATM in Conyers, Georgia. Surveillance video showed that the withdrawal was made by someone "attempting to conceal their identity" by wearing a long overcoat with the collar up, a hat, and sunglasses at night. On November 16, 2018, Defendant asked James Owens, who had done some handyman work for Defendant, to drive him to Georgia to "make a few dollars." Mr. Owens testified that they drove to Atlanta in "a little white car" that looked like the vehicle Defendant was driving when he took Mr. Stephens to open his checking account. Shortly after midnight on November 17, 2018, Mr. Owens withdrew $600 from an ATM, using a debit card provided by Defendant. Defendant paid Mr. Owens $50 for driving him. Mr. Owens admitted that he had prior felony convictions for aggravated burglary and possession of drugs.

On December 19, 2018, Defendant deposited three checks written from Mr. Stephens' account into his own accounts. At 12:31 p.m., Defendant deposited a $7,500 check into his account at the First Tennessee Bank in Maryville. At 1:23 p.m., Defendant passed a check for $4,800 from Mr. Stephens' account. He deposited $800 into his account and cashed the balance at the Walland branch of Regions Bank. About half an hour later, Defendant passed a $5,000 check from Mr. Stephens' account. He deposited $500 into his account and cashed the balance at the Midland branch of Regions Bank.

At 2:11 p.m. on December 19, 2018, Defendant could be seen on surveillance video withdrawing $800 from Mr. Stephens' account at an ATM at the West Maryville branch of Regions Bank. On December 20, 2018, Defendant withdrew $800 from Mr. Stephens' account at an ATM at the Midland branch of Regions Bank. On December 22, 2018, Defendant withdrew $700 from Mr. Stephens' account at the Midland branch ATM. The last withdrawal from Mr. Stephens' account was made on January 17, 2019, and it was for $600.

Police officers executed a search of Defendant's residence. They observed a white Saturn sedan that looked like the same vehicle Defendant was driving in some of the bank surveillance videos. Inside the home, police found three receipts dated February 1, 2019 from a CVS store, each showing a "$500 reload of a gift card." Police also found multiple

other gift cards and a large amount of cash inside a safe, as well as a pouch containing titles to cars showing that the vehicles had been "paid off on or about December 19th of 2018," which was the same date that Defendant cashed three checks from Mr. Stephens' checking account. Detective Folmar compared the signature on the three checks with Mr. Stephens' signature on his driver's license and determined that the signatures did not appear to be consistent.

Defendant was arrested on February 8, 2019. Bank statements showed that there was no activity on Mr. Stephens' account after January 17, 2019, other than monthly life insurance deposits in the amount of $600.

Holly King, an officer for the Tennessee Department of Correction, met with Defendant at the Blount County Detention Center to discuss the charges against him. Defendant told Ms. King that Mr. Stephens' family had allowed Defendant to use the account.

Defendant did not testify or present any other proof. The jury convicted Defendant as charged. Following a sentencing hearing, the trial court sentenced Defendant as a Range III persistent offender to serve 12 years for each of his identity theft convictions and 15 years for his forgery conviction. The trial court ordered that the sentences be served consecutively to each other and consecutively to a life sentence Defendant was serving for a prior murder conviction.[1]

Defendant filed a timely motion for new trial, in which he challenged the sufficiency of the evidence and argued that his rights under the Confrontation Clause were violated. The trial court denied Defendant's motion after a hearing, and this appeal followed.

## *Analysis*

### *Hearsay Testimony*

Defendant first argues that the trial court erred by failing to exclude as hearsay the testimony of Holly King that Defendant told her that Mr. Stephens' family gave him permission to use his account. The State responds that Defendant has waived the issue by failing to include it in his motion for new trial.

Prior to trial, defense counsel filed a motion to exclude "any testimony from Holly King as irrelevant and unreliable hearsay." After a hearing, the trial court denied the

---

[1] The evidence at Defendant's sentencing hearing established that Defendant was on parole for this prior murder conviction at the time the subject offenses were committed.

motion, concluding that Defendant's statement to Ms. King was an admission against interest, an exception to the rule against hearsay.

Defendant failed to include the issue in his motion for new trial. As such, the issue has not been preserved for appellate review. *See* Tenn. R. App. P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived").

Despite Defendant's waiver of the issue, we note that "an error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for new trial or assigned as error on appeal," if the appellate court considers such notice "necessary to do substantial justice." Tenn. R. Crim. P. 52(b). In conducting a plain error review, a court will reverse for plain error only if:

(a) The record . . . clearly establish[es] what occurred in the trial court;
(b) a clear and unequivocal rule of law [has] been breached;
(c) a substantial right of the accused [has] been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The appellate court need not consider all five factors if it determines that any single factor indicates that relief is not warranted. *Id.* at 283. Furthermore, for this Court to reverse the judgment of the trial court, the "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial," and "recognition should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial court." *Adkisson*, 899 S.W.2d at 642. Moreover, it is the defendant, not the State, who bears the burden of demonstrating plain error. *State v. Gomez*, 239 S.W.3d 722, 727 (Tenn. 2007) (*Gomez II*).

We cannot conclude that the alleged evidentiary error complained of by Defendant rises to the level of plain error. This Court has held that "rarely will plain error review extend to an evidentiary issue." *State v. Ricky E. Scoville*, No. M2006-01684-CCA-R3-CD, 2007 WL 2600540 (Tenn. Crim. App. Sept. 11, 2007), *no perm. app. filed*. Defendant has failed to carry his burden of showing that consideration of the alleged error is "necessary to do substantial justice" in this case. Accordingly, we do not extend review.

*Confrontation Clause*

Defendant contends that his right to cross-examine under the Confrontation Clause was violated by the State's failure to present testimony by the victim. The State responds that the Confrontation Clause was not implicated because the State did not introduce any out-of-court statements by the victim. We agree.

The Sixth Amendment to the United States Constitution provides that the accused in a criminal prosecution "shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. Similarly, article I, section 9 of the Tennessee Constitution provides that, "in all criminal prosecutions, the accused hath the right . . . to meet the witnesses face to face[.]" Tenn. Const. art. I, § 9.

The constitutional right afforded by the Confrontation Clause applies to testimonial hearsay statements by an unavailable witness where the defendant did not have a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004). Under *Crawford*, "when an accused challenges the admissibility of a statement under the Confrontation Clause, the threshold question is whether the statement is testimonial or nontestimonial." *State v. Cannon*, 254 S.W.3d 287, 301 (Tenn. 2008) (citing *United States v. Hinton*, 423 F.3d 355, 358 (3d Cir. 2005)). Here, Defendant does not identify on appeal, and the State did not introduce at trial an out-of-court statement, testimonial or nontestimonial, by the victim.

Without the introduction of an out-of-court statement by the State, there was nothing for Defendant to confront, and thus, there has been no violation of his right to confrontation by the victim's absence at trial. As part of his argument, Defendant also asserts that the trial court erred by denying his motion for a judgment of acquittal and that the State failed to establish that Defendant lacked the victim's consent. We interpret this argument as a challenge to the sufficiency of the evidence, which we address below.

*Sufficiency of the Evidence*

Defendant argues that the evidence is insufficient to sustain his convictions for identity theft and forgery. Specifically, he contends that the State failed to establish beyond a reasonable doubt that he lacked the effective consent of the victim because the victim did not testify at trial. The State responds that the circumstantial evidence is more than sufficient to support Defendant's convictions. We agree with the State.

When a defendant challenges the sufficiency of the evidence supporting a conviction, the standard of review applied by this Court is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Similarly, Rule 13(e) of the Tennessee

Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citing *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)). Because a guilty verdict "removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 370 (Tenn. 2011) (quoting *Hanson*, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this Court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

"A person commits the offense of identity theft who knowingly obtains, possesses, buys, or uses, the personal identifying information of another . . . [w]ith the intent to commit any unlawful act including, but not limited to, obtaining or attempting to obtain credit, goods, services or medical information in the name of such other person" without the consent of the other person. T.C.A. § 39-14-150(b)(1). Personal identifying information means "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual," including, in relevant part, "[n]ame, social security number, date of birth, [or] official state or government issued driver license or identification number[.]" *Id.* § 39-14-150(e)(1). The offense of forgery is committed when a person "forges a writing with intent to defraud or harm another." *Id.* § 39-14-114(a). To "forge" is to "[a]lter, make, complete, execute or authenticate any writing so that it purports to . . . [b]e the act of another who did not authorize that act." *Id.* § 39-14-114(b)(1)(A)(i).

In the instant case, the proof at trial established that Defendant accompanied Mr. Stephens to the bank to open a checking account into which recurring monthly life insurance payments payable to Mr. Stephens were deposited. On the same day the account was opened, Defendant passed one of Mr. Stephens' starter checks on which Mr. Stephens' name was misspelled and the signature did not match Mr. Stephens' signature. Less than two weeks after the account was opened, Mr. Stephens mysteriously vanished and was not seen or heard from again. Defendant thereafter withdrew large sums of money from Mr. Stephens' checking account on several occasions and under suspicious circumstances, the first being the timing of the transactions within a day or two of the monthly deposits being posted to the account. The day after a lump sum of $19,000 was deposited, Defendant passed three checks totaling $17,300 that were drawn on the victim's account, and the transactions were all close in time to each other but at different bank locations. On two occasions, withdrawals from Mr. Stephens' account were made late at night at ATMs in Georgia, the first by someone wearing a disguise and the second by Defendant being driven by Mr. Owens. Defendant continued to withdraw money from Mr. Stephens' checking account despite having not seen or heard from Mr. Stephens after September, 2018.

The evidence was sufficient to sustain Defendant's identity theft and forgery convictions. Defendant is not entitled to relief.

*Sentencing*

Defendant argues that his total effective sentence of 63 years is excessive. The State responds that the trial court properly exercised its discretion in imposing the maximum within-range sentences and aligning each sentence consecutively. We agree with the State.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (h) the result of the validated risk and needs assessment. T.C.A. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The burden of showing that a sentence is improper is upon the appealing party. *See* T.C.A. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

At the sentencing hearing, the State introduced certified copies of judgments of conviction from Defendant's prior convictions, which included convictions in 1981 for felony taking the automobile of another for temporary use without the consent of the owner; forgery of a check in an amount exceeding $200; offering to pass a forged check in an amount exceeding $200; receiving stolen property not exceeding $100 in value; and felony larceny of property valued at over $200. In 1985, Defendant was convicted of grand larceny; first degree murder; forgery over $200; passing a forged instrument over $200; and two counts of aggravated assault. A federal background check revealed that Defendant also had prior convictions for carrying a concealed weapon in 1976, second degree burglary in 1979, and possession of stolen property in 1984.

The State also introduced a presentence investigation report, which included a Strong-R Assessment stating that Defendant was at moderate risk for reoffending. Defendant's criminal history included a parole revocation in 1985, and he was on parole for his murder conviction when he committed the offenses in this case.

Based on Defendant's criminal history, the trial court determined that Defendant was a Range III persistent offender. The court applied as enhancement factors that Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; that Defendant had a previous failure to comply with the conditions of a sentence involving release; and that Defendant committed the offense while on parole. *See* T.C.A. § 40-35-114(1), (8), and (13). The court found no applicable mitigating factors. Additionally, the trial court found that Defendant's criminal history was extensive and that he was a professional criminal who had "knowingly devoted his life to criminal acts as a major source of his livelihood." Based on these findings, the trial court imposed the maximum within-range sentences of 12 years for each of the identity theft convictions and 15 years for the forgery conviction and ordered the sentences to be served consecutively. *See* T.C.A. § 40-35-112(c)(3), (4); T.C.A. § 40-35-115(b)(1), (2).

Defendant's argument is severely lacking in citations to the record and authority. A defendant is required on appeal to make appropriate references to the record in the

argument portion of his brief and to cite relevant authority. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). Defendant does not specifically challenge the trial court's application of any single enhancement factor, the court's failure to apply any mitigating factors, or the court's imposition of consecutive sentencing. Rather, Defendant simply avers that "his sentence was excessive under the circumstances of these cases," and that the trial court's imposition of "the maximum allowable punishment . . . was not justly deserved in relation to the seriousness of the offenses." We disagree.

The record reflects that the trial court imposed within-range sentences based upon a proper application of the purposes and principles of sentencing. The trial court's decision is presumed reasonable, and Defendant has failed to establish that the trial court abused its discretion in imposing an effective 63-year sentence. *See Bise*, 380 S.W.3d at 707.

### *Conclusion*

Upon reviewing the record, the parties' briefs, and the applicable law, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE

- 10 -